HILL-BEHAN LUMBER COMPANY, a Corporation, Appellant, v. STATE HIGHWAY COMMISSION.—148 S. W. (2d) 499.

Division One, March 13, 1941.

*Jacob M. Lashly, Arthur V. Lashly* and *Frank E. Atwood* for appellant.

*Louis V. Stigall* and *Wilkie Cunnyngham* for respondent.

*John B. Pew* and *Rufus Burrus* for Jackson County, *amicus curiae.*

BRADLEY, C.—This is an action for consequential damages resulting to plaintiff's property from the building of a viaduct in a State highway. The jury returned a verdict for plaintiff for $42,500. Motion for new trial was sustained on the ground that the court erred in refusing to direct a verdict for defendant at the close of the whole case, and plaintiff appealed.

Plaintiff owns 26.38 acres of land in St. Louis County, not in any incorporated town or city. The tract is bounded on the east by the Wabash railroad, and on the south by Page Avenue (also called Page Boulevard), a State highway, 100 feet in width. Page Avenue, in front of plaintiff's land, was dedicated as a public road, 100 feet

in width, in 1870, and has so remained. Plaintiff purchased the east portion (7.15 acres) of the tract in 1916, and the remainder (19.23 acres) in 1923. On the tract, and practically since purchase, plaintiff has conducted a wholesale and retail lumber and building supplies business. The buildings, sheds, etc., used in connection with the business, front, from the east end of the tract, about 450 feet on Page Avenue. In 1931, fifty-six feet in the center of Page Avenue along by plaintiff's land was paved with concrete and such was the condition in 1935, when the State Highway Commission caused to be constructed a viaduct, 42 feet in width, in the center of Page Avenue, and in front of plaintiff's improvements. The viaduct commenced about 450 feet west of the east line of plaintiff's tract, and extended east, gradually increasing in height, and reaching a height of about 22 feet at the east line of plaintiff's tract of land, then passed over the Wabash tracks and down to the street level. There is a ramp on each side of the viaduct.

Plaintiff's theory of recovery was given in its main instruction which told the jury that the Constitution (Sec. 21, Art. 2) provides "that private property shall not be *damaged for public use* without just compensation; . . . that the use to which the viaduct, constructed under authority of defendant, in and over Page Boulevard and running over the Wabash railroad tracks and in front of and adjacent to plaintiff's property mentioned in the evidence *is a public use,* and if you believe and find from the evidence that said viaduct, as constructed and used upon said Page Boulevard, has resulted in an elevation of the grade of Page Boulevard in front of plaintiff's said property and that the means of *ingress* and *egress* to and from said property have thereby been obstructed or impaired, and if you further believe and find from the evidence that plaintiff's said property has suffered damages as the direct and proximate result of said construction and grade elevation, and that such *damages,* if any, were not otherwise compensated for by special benefits, if any, accruing to plaintiff's property by reason of the viaduct, then and in that event, your verdict should be in favor of the plaintiff and against the defendant" (italics ours).

Also, the jury was instructed that if they found for plaintiff, the damages would be measured by "the difference, if any, between the market value of plaintiff's property (real estate) . . . immediately before the construction of the viaduct and change of grade on Page Boulevard in front of and along plaintiff's property . . . and the market value of said property immediately thereafter." And the jury was also instructed that, in determining the market value "after the construction of the viaduct and the change of grade," they might take into consideration the extent, if any, to which means of *ingress* to and *egress* from plaintiff's property were obstructed or impaired by the viaduct and change of grade.

Section 21, Article 2 of the Constitution is a part of our Bill of Rights and first appeared in its present form in the Constitution of 1875. Including the *purpose* clause, common to all sections of the the Bill of Rights, Section 21, Article 2, so far as pertinent here, is as follows:

"In order to assert our rights, acknowledge our duties, and proclaim the principles on which our government is founded, we declare: That private property shall not be taken *or damaged* for public use without just compensation. Such compensation shall be ascertained by a jury or board of commissioners of not less than three freeholders, in such manner as may be prescribed by law; and until the same shall be paid to the owner, or into court for the owner, the property shall not be disturbed or the proprietary rights of the owner therein divested" (italics ours).

Plaintiff is an abutting owner on the highway and contends that under the *or damaged* provision of Section 21, Article 2, Constitution, recovery can be had. Zoll v. St. Louis County, 343 Mo. 1031, 124 S. W. (2d) 1168, like the present case, was based on Section 21, Article 2 of the Constitution, and was for *consequential damages* resulting from the change of grade of a public highway. The facts in the Zoll case were these: The Zolls owned two lots in St. Louis County, but not in any incorporated town or city. These lots abutted on a public highway established in 1898. In 1932, the county, acting through the county judges, caused the grade of the highway along by the lots to be raised some 7 to 9 feet. In that case we pointed out that county judges, in dealing with public roads, are agents of the State and not of the counties, and after reviewing quite a number of cases and calling attention to the fact that there was no statute authorizing such suit we held that the Zolls could not recover.

Plaintiff, however, says that Section 8102, Revised Statutes 1929, 10 Ann. Stat., p. 6889, provides that the State Highway Commission "may sue and be sued," and that therefore, there is statutory authority for the present suit. So can counties sue and be sued in many instances, but absent an authorizing statute, a county cannot be sued for changing the grade of a public highway as was ruled in the Zoll case, supra, and there is no authority to support the contention that Section 8102 authorizes such suit as here. By an authorizing statute, we do not mean such statute as Section 8102, but a statute specifically providing for the payment of damages when caused to abutting owners by the change of grade of a public highway.

The cases from this State, chiefly relied on by plaintiff, concern municipal corporations, but as we pointed out in the Zoll case (343 Mo. 1031, 124 S. W. (2d) 1. c. 1172) such cases are not authority for the maintenance of such cause as here because the municipality, in changing the grade of a street, "is acting in a private and proprietary capacity and for its own private benefit." And it would seem that

such suits against municipal corporations would not lie except for express authority. In 3 Dillon on Munic. Corps. (5 Ed.), p. 1820, sec. 1152, it is said:

"The law is settled . . . that, unless expressly so declared by special constitutional provision, or by charter or statute, a municipal corporation is not liable to property owners for the consequential damages necessarily resulting from either establishing a grade or changing an established grade of streets."

Such statutes as mentioned by Dillon have long existed in Missouri. Section 6275, R. S. 1929, 8 Ann. Stat., p. 5259, applicable to cities of the first class provides: "No street, avenue, sidewalk, alley or other public place in any city of the first class, excepting parks, parkways and boulevards, shall be graded so as to change the existing grade thereof, unless the property owners to be affected thereby petition therefor and waive all claims to damages on account thereof, or unless such damages shall be first ascertained and paid as hereinafter provided."

For cities of the second class, see Secs. 6628, 6648, R. S. 1929, 8 Ann. Stat., pp. 5543, 5544, 5555, and Guaranty Savings & Loan Assn. et al. v. City of Springfield, 346 Mo. 79, 139 S. W. (2d) 955. And for third and fourth class cities, see respectively, Secs. 6849, 7062, R. S. 1929, 8 Ann. Stat., pp. 5656, 5781.

State ex rel. State Highway Commission v. Bailey et al. (Mo. App.), 115 S. W. (2d) 17, was in condemnation. The defendant landowners (appellants), among other assignments, complained of plaintiff's Instruction 14. Of this assignment the court said (115 S. W. (2d) l. c. 22):

"It is argued that said instruction was prejudicial because it permitted the State to *change all the grades,* drains, etc., of the old road in connection with the widening project, but *limited* the jury *to a consideration* of the new work done on the 10-foot strip and no other. The instruction complained of told the jury that the State was authorized, without any compensation whatever to defendants, to widen the concrete slab and do other necessary road building work *within the confines of the State highway right of way* owned by the State prior to the institution of this suit; and that, if the jury believed from the evidence that any portion of the work described in the evidence was done on land already belonging to the State and dedicated to highway uses, then, in arriving at the damages to be allowed to defendants, the jury should allow nothing for the work, if any, so done *within the confines* of the right of way so owned by the State prior to the institution of this suit, *even though* such work, if any, *may have inconvenienced* the defendants or *injured* the *market* value of said property. We are of the opinion that said instruction was not erroneous" (italics ours).

Riggs v. City of Springfield, 344 Mo. 420, 126 S. W. (2d) 1144,

was to recover damages to land caused by the city's emptying sewage into Wilson creek near the city. Under the facts, the cause was determined under the law of eminent domain, and in the course of the opinion, this language was used (126 S. W. (2d) 1. c. 1149):
"It is the general rule that the owner of land subject to a public easement has no right to insist that the public use remain precisely the same, and if the original use is changed to another of the same general character and no new or other burdens are imposed, there is no reversion and the owner is not entitled to additional compensation."

Sauer v. City of New York, 206 U. S. 536, 27 Sup. Ct. 686, 51 L. Ed. 1176, was to enjoin the maintenance of a viaduct, or to recover damages. Relief was denied plaintiff in the State courts, 180 N. Y. 27, 72 N. E. 579, 70 L. R. A. 717, and the cause reached the Supreme Court of the United States, where the judgment of the State court was affirmed. In the opinion the court said (206 U. S. 1. c. 544):
"The State courts have uniformly held that the erection over a street of an elevated viaduct, intended for general public travel and not devoted to the exclusive use of a private transportation corporation, is a legitimate street improvement equivalent to a change of grade; and that, as in the case of a change of grade, an owner of land abutting on the street is not entitled (absent a statute) to damages for the impairment of access to his land and the lessening of the circulation of light and air over it."

"The opening, construction and maintenance of public highways is purely a governmental function, whether done by the State directly or by one of its municipalities." [13 R. C. L., p. 79, sec. 70.] Under the governmental function rule, not always specifically referred to, and absent an authorizing statute, relief has been denied where damages resulted by falling from an unguarded bridge (Reardon v. St. Louis County, 36 Mo. 555); from filling up a millrace to prevent injury to a public road (Swineford et al. v. Franklin County, 73 Mo. 279); from a defective bridge in a public road (Pundeman v. St. Charles County, 110 Mo. 594, 19 S. W. 733; Clark v. Adair County, 79 Mo. 536); from driving an automobile, in the nighttime, into a creek where a bridge had been removed and the place left unguarded (Moxley v. Pike County, 276 Mo. 449, 208 S. W. 246). Also, and in spite of Sec. 21, Art. 2 of the Constitution, and under the rule of governmental function, relief has been denied, because of the absence of an authorizing statute, where lands, outside of a drainage district, have been damaged from overflow due to the improvements of the district. [Anderson et al. v. Inter-River Drainage Dist., 309 Mo. 189, 274 S. W. 448; Sigler et al. v. Inter-River Drainage Dist., 311 Mo. 175, 279 S. W. 50; Max v. Barnard-Bolckow Drainage Dist., 326 Mo. 723, 32 S. W. (2d) 583.] See also, Todd v. The Curators of the University of Missouri, 347 Mo. 460, 147 S. W. (2d) 1063,

concurrently handed down, and where it is held that the State University is not liable for failure to exercise ordinary care to furnish a reasonably safe place to work.

In the Zoll case (343 Mo. 1031, 124 S. W. (2d) 1173) we said that "courts in other jurisdictions, with constitutional provisions in effect the same as our Sec. 21, Art. 2, have upheld suit against counties for consequential damages resulting from public improvements. However, in some instances there was an authorizing statute, or a statute construed in connection with the Constitution," citing Board of Commissioners of Logan County v. Adler, 69 Colo. 290, 194 Pac. 621, 20 A. L. R. 512; County of Chester v. Brower, 117 Pa. 647, 12 Atl. 577, 2 Am. St. Rep. 713; Elliott v. County of Los Angeles, 183 Cal. 472, 191 Pac. 899; Smith v. Floyd County, 85 Ga. 420, 11 S. E. 850; Dallas County v. Dillard, 156 Ala. 354, 47 So. 135, 18 L. R. A. (N. S.) 884; County of Douglas v. Taylor, 50 Neb. 535, 70 N. W. 27; Nelson County v. Loving, 126 Va. 283, 101 S. E. 406, but such has not been the rule in this State.

Plaintiff argues that this court has already, in effect, decided that recovery can be had in the present case. This contention is based on the ruling in Hill-Behan Lumber Co. v. Skrainka Construction Co., 341 Mo. 156, 106 S. W. (2d) 483. That cause was against the contractor and the members of the State Highway Commission to enjoin the building of the viaduct concerned here until plaintiff's damages, if any, were ascertained and paid. It was held that plaintiff was not entitled to injunctive relief because there was adequate remedy at law for any damages that plaintiff "may have sustained." The question of whether plaintiff was *entitled* to recover damages was not before the court in the injunction suit, and the *effect* of the opinion in that case is no more than that if plaintiff was entitled to recover damages, it had an adequate remedy at law.

It is our conclusion that plaintiff cannot recover in this cause, and we base that conclusion on the absence of a statute authorizing damages to abutting property owners, if damage results, when the State or its agency changes the grade of a public highway. Such a statute would be an unequivocal *consent* of the State for the maintenance of such a suit as here. We held in the Zoll case (343 Mo. 1031, 124 S. W. (2d) l. c. 1173) that Sec. 21, Art. 2 of the Constitution "is not in itself consent of the State to maintain" such cause as here. Also, we made an observation, in the Zoll case, that is *apropos* here, and that observation is this (343 Mo. 1031, 124 S. W. (2d) l. c. 1183):

"Section 21, Article 2 of the Constitution, containing the *or damaged* provision, has been a part of our organic law since 1875, yet no such cause as the present one has been permitted to be maintained against the State or its agencies. It is the prerogative of the State to determine when suit may be maintained against it or its agencies and when not."

If plaintiff has sustained damages by the building of the viaduct, such damages are *damnum absque injuria.* [1 C. J., p. 964, sec. 57; 1 C. J. S., subdivision (b), p. 1006, sec. 15.] The order and judgment granting the new trial should be affirmed and the cause remanded with directions to the trial court to dismiss plaintiff's petition. It is so ordered. *Hyde* and *Dalton, CC.,* concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur.