Jean JONES, Plaintiff-Appellant,

v.

STATE HIGHWAY COMMISSION,
Defendant-Respondent.

No. 60017.

Supreme Court of Missouri,
En Banc.

Sept. 12, 1977.

Respondent's Motion for Rehearing
Denied; As Modified on Court's
own Motion Nov. 14, 1977.

James W. Jeans, Kansas City, Leon B. Seck, Harrisonville, for plaintiff-appellant.

John W. Maupin, Jefferson City, Bruce A. Ring, Counsel State Highway Commission, Jefferson City, for defendant-respondent.

SEILER, Judge.

Appellant Jones filed suit against the respondent state highway commission seeking damages for her personal injuries suffered in an automobile accident while traveling on one of the state's highways. The circuit court sustained respondent's motion to dismiss for failure to state a claim upon which relief could be granted based upon respondent's assertion of sovereign immunity as a bar to suit. Jones then appealed to the court of appeals, Kansas City district, which in turn transferred the cause on its own order to this court due to the questions of general interest and importance involved. Mo.Const., Art. V., § 10; Rule 83.02. On the same date that the instant case was argued, we also heard argument in three other cases where the defense of sovereign immunity against tort claims was advanced: No. 59958, *Prewitt v. Parkway School District*, 557 S.W.2d 232, a claim against a school district where plaintiff, who was entering the building to register for a night class, slipped on a wet spot in the school hallway; No. 60012, *Wheeler v. St. Clair Hospital District*, 557 S.W.2d 233, a claim against a hospital district for a death growing out of a hospital fire allegedly caused by the hospital's negligence and No. 60042, *State ex rel. Racer v. Richardson*, 557 S.W.2d 235, a malpractice claim against a county hospital by a patient.

The question presented is whether sovereign immunity against tort liability is to remain a defense to claims against various instrumentalities of the state, in the instant case the state highway commission.

The facts as alleged in appellant's petition are as follows: While driving southwardly and rounding a right hand curve on highway 71 in Jackson County, appellant's automobile left the road and went onto its irregular and uneven shoulder which was four inches below the roadway surface. While attempting to return to the road, appellant lost control of the automobile, which then veered across the highway to the right shoulder, struck a highway sign anchored in concrete, and rolled down the adjacent embankment, resulting in severe injury to appellant.

Appellant filed her petition in the circuit court in two counts. The first count alleged negligence in design, negligence in permitting the highway to remain in a dangerous and defective condition, and negligence in failing to warn of the dangerous and defective condition. The second count alleged that the dangerous and defective conditions of the highway's design and construction constituted a nuisance created and maintained by respondent.

We hold that sovereign immunity against tort liability is no longer a bar to such actions and reverse and remand for further proceedings.

This is not the first time we have faced the task of evaluating the argument and scholarship over the continued vitality and validity of the doctrine of sovereign immunity. Experience in the last three decades in other states shows wide support as a matter of public policy for a broad area of governmental tort liability, whether accomplished judicially or legislatively. For a review of the progress of abolition of governmental immunity see K. Davis, Administrative Law of the Seventies ch. 25 (1976 & Supp. 1977); Harley, P. and Wasinger, B., Governmental Immunity: Despotic Mantle or Creature of Necessity, 16 Washburn L.J. 12 (1976); Van Alstyne, Governmental Tort Liability: A Decade of Change, 1966 U.Ill. L.Rev. 919 (1966); Comment 36 U.Md.L. Rev. 653 (1977).[1]

Our duty is to respond to the claims which come before us in a manner consistent with the principles embedded in our constitution, statutes, and judicial precedents. This requires, on rare occasions, as it does today, that we reject an earlier rule.[2] We conclude that it is the proper function of the court in applying the

1. As of the date of this opinion, twenty-nine states and the District of Columbia, have, by judicial decision, either completely or to varying degrees, abrogated the doctrine of sovereign immunity from tort liability. See *Carter v. Carlson*, 144 U.S.App.D.C. 388, 447 F.2d 358 (1971), rev'd on other grounds, sub nom. *District of Columbia v. Carter*, 409 U.S. 418, 93 S.Ct. 602, 34 L.Ed.2d 613 (1973); *Spencer v. General Hosp.*, 138 U.S.App.D.C. 48, 425 F.2d 479 (1969); *City of Foley v. Terry*, 278 Ala. 30, 175 So.2d 461 (1965); *Scheele v. City of Anchorage*, 385 P.2d 582 (Alaska 1963); *City of Fairbanks v. Schaible*, 375 P.2d 201 (Alaska 1962); *Stone v. Arizona Highway Comm'n*, 93 Ariz. 384, 381 P.2d 107 (1963); *Parish v. Pitts*, 244 Ark. 1239, 429 S.W.2d 45 (1968); *Muskopf v. Corning Hosp. Dist.*, 55 Cal.2d 211, 359 P.2d 457, 11 Cal.Rptr. 89 (1961), modified sub nom. *Corning Hosp. Dist. v. Superior Court*, 57 Cal.2d 488, 20 Cal.Rptr. 621, 370 P.2d 325 (1962); *Evans v. Board of County Commn'rs*, 174 Colo. 97, 482 P.2d 968 (1971); *Colorado Racing Comm'n v. Brush Racing Ass'n*, 136 Colo. 279, 316 P.2d 582 (1957); *Murphy v. Ives*, 151 Conn. 259, 196 A.2d 596 (1963); *Hargrove v. Town of Cocoa Beach*, 96 So.2d 130 (Fla. 1957); *Smith v. State*, 93 Idaho 795, 473 P.2d 937 (1970); *Molitor v. Kaneland Community Unit Dist. No. 302*, 18 Ill.2d 11, 163 N.E.2d 89 (1959), cert. denied, 362 U.S. 968, 80 S.Ct. 955, 4 L.Ed.2d 900 (1960); *Perkins v. State*, 252 Ind. 549, 251 N.E.2d 30 (1969); *Klepinger v. Board of Commr's*, 143 Ind.App. 155, 239 N.E.2d 160 (1968); *Brinkman v. City of Indianapolis*, 141 Ind.App. 662, 231 N.E.2d 169 (en banc 1967); *Carroll v. Kittle*, 203 Kan. 841, 457 P.2d 21 (1969); *Haney v. City of Lexington*, 386 S.W.2d 738 (Ky.1964); *Board of Commissioners v.*

*Splendour Shipping & Enterprises Co.*, 273 So.2d 19 (La.1973); *Hamilton v. City of Shreveport*, 247 La. 784, 174 So.2d 529 (1965); *Morash & Sons, Inc. v. Commonwealth*, 363 Mass. 612, 296 N.E.2d 461 (1973); *Myers v. Genesee County Auditor*, 375 Mich. 1, 133 N.W.2d 190 (1965); *Williams v. City of Detroit*, 364 Mich. 231, 111 N.W.2d 1 (1961); *Spanel v. Mounds View School Dist. No. 621*, 264 Minn. 279, 118 N.W.2d 795 (1962); *Johnson v. Municipal University of Omaha*, 184 Neb. 512, 169 N.W.2d 286 (1969); *Brown v. City of Omaha*, 183 Neb. 430, 160 N.W.2d 805 (1968); *Rice v. Clark County*, 79 Nev. 253, 382 P.2d 605 (1963); *Merrill v. City of Manchester*, 114 N.H. 722, 332 A.2d 378 (1974); *Willis v. Department of Conservation & Economic Dev.*, 55 N.J. 534, 264 A.2d 34 (1970); *McAndrew v. Mularchuk*, 33 N.J. 172, 162 A.2d 820 (1960); *Hicks v. State*, 88 N.M. 588, 544 P.2d 1153 (1976); *Kitto v. Minot Park Dist.*, 224 N.W.2d 795 (N.D.1974); *Ayala v. Philadelphia Board of Public Education*, 453 Pa. 584, 305 A.2d 877 (1973); *Becker v. Beaudoin*, 106 R.I. 562, 261 A.2d 896 (1970); *Kelso v. City of Tacoma*, 63 Wash.2d 913, 390 P.2d 2 (1964); *Long v. City of Weirton*, 214 S.E.2d 832 (W.Va.1975); *Holytz v. Milwaukee*, 17 Wis.2d 26, 115 N.W.2d 618 (1962); *Town of Douglas v. York*, 445 P.2d 760 (Wyo.1968).

2. For scholarly discussions on the nature of the contemporary judicial process, see Day, Why Judges Must Make Law, 26 Case Western L.Rev. 563 (1976); Dworkin, Hard Cases, 88 Harv.L.Rev. 1057 (1975); Hart, Law in the Perspective of Philosophy: 1776–1976, 51 N.Y.U.L. Rev. 538 (1976).

principles of a limited constitutional government to reject the rule of sovereign tort immunity and declare that the government shall be liable for its torts, consistent with the proposition that the government is not, in the American system, all powerful. This is in accord with the implicit principles manifested in the whole body of our existing positive law. We have thus determined that the dissent of Finch, J., filed in *O'Dell v. School District of Independence*, 521 S.W.2d 403, 409 (Mo. banc 1975), which thoroughly discusses the doctrine and the reasons for its abandonment, expresses the view we should now adopt. Accordingly, great reliance will be placed upon that dissent in the course of this opinion.

■ As did Judge Finch, we first address the question of whether the doctrine of sovereign immunity in tort is statutory or decisional, an inquiry crucial to the court's authority to abolish the doctrine under the proper circumstances. *Abernathy v. Sisters of St. Mary's*, 446 S.W.2d 599 (Mo. banc 1969).[3] We are led to the conclusion that our § 1.010, RSMo 1969, which adopted the common law of England prior to 1607, the fourth year of the reign of James I, did not adopt the English common law as a substantive statute, but rather as decisional law. Therefore, assuming *arguendo* that the doctrine of sovereign immunity appeared in English jurisprudence prior to the fourth year of the reign of James I, we nevertheless have the authority to alter or abrogate the doctrine.[4]

The second issue is, of course, whether the doctrine should be altered or abrogated.

Six reasons offered by English common law and Missouri cases to justify the existence of the doctrine were examined and refuted. The first justification came from the early English cases in which it was said that a suit against a governmental unit such as a town or village was actually a suit against all members of the public, as at that time such governmental units did not have corporate or quasi-corporate existence and were without corporate funds to satisfy judgments. Great inconvenience to the public would result as defendants of means who were required to pay sought contribution from other members of the public. As was pointed out,[5] this argument has lost all forcefulness since today government units have a corporate or quasi-corporate existence and possess corporate funds.

Second, public policy as expressed in the early English cases held that it was better for the injured individual to bear a loss than the public which would then be forced to suffer an inconvenience. This concept was rejected by us in *Garnier v. St. Andrew Presbyterian Church*, 446 S.W.2d 607 (Mo. banc 1969).

Third, the often quoted maxim that the king can do no wrong has been offered frequently to justify the continued existence of the doctrine. Modern governmental entities cannot, however, lay claim to that inheritance.[6]

The fourth justification declares that public officers are without authority to bind the sovereign without constitutional or statutory authorization. Moreover, the argument continues, any such ability to bind the sovereign would lead inexorably to the wasteful and dishonest dissipation of public funds. We cannot expect that plaintiffs in suits against governmental units will take

---

**3.** The full text of § 1.010 is as follows:

"The common law of England and all statutes and acts of parliament made prior to the fourth year of the reign of James the First, of a general nature, which are not local to that kingdom and not repugnant to or inconsistent with the Constitution of the United States, the constitution of this state, or the statute laws in force for the time being, are the rule of action and decision in this state, any custom or usage to the contrary notwithstanding, but no act of the general assembly or law of this state shall be held to be invalid, or limited in its scope or effect by the courts of this state, for the reason that it is in derogation of, or in conflict with, the common law, or with such statutes or acts of parliament; but all acts of the general assembly, or laws, shall be liberally construed, so as to effectuate the true intent and meaning thereof."

**4.** *O'Dell*, supra, at 410–13.

**5.** *O'Dell*, supra at 414.

**6.** *O'Dell*, supra at 414–15.

on any particular personality trait any more so than plaintiffs in other tort actions.[7] Likewise, it cannot be expected that if government is to be subject to suit in tort that government employees will dishonestly dissipate public funds or disburse them in any fashion except in response to court judgments. Additionally we believe that government should both have the benefits of its agents' and employees' acts and the responsibility of them. The doctrine of respondeat superior, in short, should apply to government and its employees.[8]

The fifth justification advanced is the trust fund theory. Its premise is that money which is appropriated to various governmental units is allocated to special purposes for which the funds are held in trust and that to use them to satisfy tort judgments would violate the trust. As we pointed out in *Abernathy v. Sisters of St. Mary's*, 446 S.W.2d 599, 604 (Mo. banc 1969), which is cited and discussed on *O'Dell*,[9] supra, the rationale of this theory relates to satisfaction of a judgment, not with whether there is or should be a cause of action. It does not provide a sound basis for maintaining the doctrine of sovereign immunity.

The sixth justification is that without the doctrine, the financial stability of government will be threatened and the proper performance of government functions will be impaired. The response of Judge Finch, with which we agree, was twofold.[10] First, it is a proper purpose of government to stand responsible for its tortious conduct. Second, there is no empirical data demonstrating that the abrogation of the doctrine will substantially impair the financial stability of government to such an extent that there will be interference with the performance of governmental functions. In addition, the prospective application of the doctrine, infra, provides a transition period, giving time for financial planning to accommodate the change. Continuation of the doctrine is not justified on the basis that financial stability of government will be threatened or proper performance of its functions impaired.[11]

We have witnessed a chipping and whittling away at the doctrine of governmental tort immunity by the Missouri courts as applied to municipalities. Through use of the "governmental-proprietary dichotomy", liability or non-liability of a municipality for its torts has come to depend upon the character of the act performed, not the nature of the tort. A "maze of inconsistency" has developed in suits against cities, producing "uneven and unequal results which defy understanding."[12]

■ Inherent in the governmental-proprietary theory developed by the courts, Judge Finch points out, is the tacit recognition that courts do have the power to modify the doctrine of sovereign immunity, and if there is the power to abrogate in part, there is a right to abrogate completely.[13]

■ Judge Finch takes the position, with which we agree, that statutes such as § 71.185, RSMo 1969, relating to liability insurance to cover municipal liability for tort claims in connection with governmental functions, § 105.850, RSMo 1969, relating to extension of workmen's compensation coverage to state employees, § 226.092, RSMo 1971 Supp., authorizing liability insurance to cover operation of certain highway commission state-owned automobiles and § 34.-275, RSMo 1973 Supp., doing the same as to other state-owned vehicles and vessels, some of which statutes contain disclaimer provisions that they shall not be construed as a waiver of sovereign immunity, do not constitute legislative expressions favoring general retention of sovereign immunity but rather are recognition of the desirabili-

---

7. *O'Dell*, supra at 415.

8. *O'Dell*, supra at 415.

9. *O'Dell*, supra at 416.

10. *O'Dell*, supra at 416–17.

11. Comment, 36 U.Md.L.Rev., supra at 661–62.

12. *O'Dell*, supra at 417–19; 417, n. 10. Some refer to it as a system of licensed negligence. 18 St. Louis U.L.J. 602, 603 (1974).

13. *O'Dell*, supra at 419.

ty of providing some relief from the present hardships and inequities of the doctrine and do not in any way purport to establish the doctrine in Missouri, citing cases from California, Kansas and Nebraska supporting his view.[14]

■ In short, we have considered the justifications for the continued validity of the doctrine and find them illogical and unconvincing and not compelled by constitutional mandate.

■ We agree with the declaration made by the Wisconsin court in abrogating sovereign immunity from tort liability in that state, *Holytz v. City of Milwaukee*, 17 Wis.2d 26, 115 N.W.2d 618 (1962), that henceforth, so far as governmental responsibility for torts is concerned, the rule is liability—the exception is immunity. However, the government, of course, is not responsible for all harm to others. The removal of immunity does not impose absolute or strict liability. It subjects the government and its units, subdivisions, agencies, or bodies to the same rules as private corporations, if a duty has been violated and a tort committed. It places responsibility on the state or an agency of the state, county, municipality, or other governmental body under the doctrine of respondeat superior for injuries negligently caused by its agents, servants and employees in the course of employment.

■ We hold that the liability is for torts committed in the execution of activity decided upon, not for the decision itself in matters which go to the essence of governing; that our decision is not meant to im-

pose liability upon the state or any of its agencies for acts or omissions constituting the exercise of a legislative, judicial, or executive function. So viewed, quite clearly all of the petitions in the four cases before us are sufficient to state a cause of action.

Thus far we have been dealing with immunity from tort liability. There remains the matter of immunity from suit, usually stated in terms of the sovereign not being liable to be sued without its consent.[15] The problem is not present, however, in the instant case or companion cases.

■ Sec. 226.100, RSMo 1969 provides the state highway commission "may sue and be sued in its official name" and designates on whom service of process may be obtained. Sec. 206.010, RSMo 1969 provides that hospital districts "in that name may sue and be sued." This is sufficient consent to suit. 72 Am.Jur.2d, States, Territories and Dependencies, Sec. 107, p. 497.

■ It is true that earlier cases of this court have held that the "sue and be sued" language does not mean the entity in question can be sued in tort,[16] some saying that it requires a statute specifically calling for payment of damages. But these cases were written at a time when sovereign immunity in tort was the rule and must be read in that light. Now that the defense of sovereign immunity in tort is gone there is no reason to require an express assumption of tort liability or to give to the words "sue and be sued" any meaning other than the usual and ordinary one conveyed by the language used, which is that the entity in question may sue and be sued, without restriction as to kind of liability sought to be imposed.

---

14. *O'Dell,* supra at 419–20.

15. The 1820 Constitution of Missouri (Art. III, § 25) and the 1865 Constitution (Art. IV, § 33) contained provisions that the general assembly "shall direct by law in what manner, and in what courts, suits may be brought against the State." No such provisions appear in the 1875 or 1945 Missouri constitutions. Nevertheless, the general assembly in many instances provides in the statute creating a governmental body or entity that it may "sue and be sued." Without undertaking a precise count, there are at least fifty such governmental agencies in Missouri, ranging from well known entities

such as the Public Service Commission and State Highway Commission to obscure ones such as county agricultural and mechanical societies.

16. *Page v. Metropolitan St. Louis Sewer Dist.,* 377 S.W.2d 348, 352 (Mo.1974); *Hill-Behan Lumber Co. v. State Highway Commission,* 347 Mo. 671, 148 S.W.2d 499, 500 (1964); *Todd v. Curators of University of Missouri,* 347 Mo. 460, 147 S.W.2d 1063, 1064 (1941); *Bush v. State Highway Commission,* 329 Mo. 843, 46 S.W.2d 854 (1932).

The final matter for disposition is the timing of the effective date of the change in the rule as to governmental tort immunity. Various possible approaches are discussed by Judge Finch in the *O'Dell* case at 521 S.W.2d 421–22 and need not be repeated here. We believe the logical course is to postpone application of this decision to all cases other than the instant one and the three other sovereign immunity cases decided this day. In order that an orderly transition be made, that adequate financial planning take place, that governmental units have time to adjust their practices and that the legislature be afforded an opportunity to consider the subject in general, the doctrine is abrogated prospectively as to all claims arising on or after August 15, 1978, except for the cases decided today as to which abrogation applies here and now.

The judgment is reversed and the cause remanded for further proceedings not inconsistent herewith.

BARDGETT, FINCH and RENDLEN, JJ., concur.

DONNELLY, J., dissents in separate dissenting opinion filed.

MORGAN, C. J., and HENLEY, J., dissent and concur in separate dissenting opinion of DONNELLY, J.

DONNELLY, Judge, dissenting.

There is little I can add on the law to what was said in the principal opinion in *O'Dell v. School District of Independence*, 521 S.W.2d 403 (banc 1975). I am not persuaded that *O'Dell* was wrong on the law. But the scholars will resolve that question. There is something more important to be said in this case.

Until today we enjoyed a system of government in Missouri in which the judicial department did not presume to legislate public policy. Historically, the legislative department in Missouri has represented "its polity and its will * * *." *Hans v. Louisiana*, 134 U.S. 1, 21, 10 S.Ct. 504, 33 L.Ed. 842 (1889). Today's decision represents a blatant exercise of the legislative function by judges. It violates the letter and spirit of Article II, Section 1 of the Constitution of Missouri.

The first section of our Bill of Rights (Mo.Const. Art. I, § 1) proclaims:

"That all political power is vested in and derived from the people; that all government of right originates from the people, is founded upon their will only, and is instituted solely for the good of the whole."

In *O'Dell*, this constitutional relationship between the people and their government was given practical recognition as follows (521 S.W.2d at 407):

" * * * In Missouri, the people are sovereign. The immunity is theirs. By adoption of our Constitution, the people of Missouri assented to be governed and established the terms of the grant. They authorized the creation of governmental entities for the performance of tasks considered essential to their general welfare. In our view, in order that such entities remain viable, it must be recognized that the immunity of the sovereign people must pass to those governmental entities which serve the public interest."

I regret that this traditional Missouri concept has been emasculated today by *judicial edict*.

I do not argue that this Court is without power to change the law in this State. I do argue that the power should be exercised with some evidence of restraint. I merely submit that the question of abolishing the immunity of the sovereign people is of fundamental importance to our form of government. It should have been decided by the people or by their elected representatives and not by this Court.

I respectfully dissent.