Paul J. WENGLER, Respondent,

v.

DRUGGISTS MUTUAL INSURANCE COMPANY, and Dicus Prescription Drugs, Inc., Appellants.

No. 60442.

Supreme Court of Missouri,
En Banc.

July 15, 1980.

---

PER CURIAM:

On June 27, 1979, this Court held § 287.-240, RSMo Supp.1976, constitutional. *Wengler v. Druggists Mutual Insurance Company*, 583 S.W.2d 162 (Mo. banc 1979).

On April 22, 1980, in *Wengler v. Druggists Mutual Insurance Co.*, —— U.S. ——, ——, 100 S.Ct. 1540, 1547, 64 L.Ed.2d 107 (1980) the United States Supreme Court reversed and said:

> "Thus we conclude that the Supreme Court of Missouri erred in upholding the constitutional validity of § 287.240. We are left with the question whether the defect should be cured by extending the presumption of dependence to widowers or by eliminating it for widows. Because state legislation is at issue, and because a remedial outcome consonant with the state legislature's overall purpose is preferable, we believe that state judges are better positioned to choose an appropriate method of remedying the constitutional violation. Accordingly, we reverse the decision of the Supreme Court of Missouri and remand the case to that court for further proceedings not inconsistent with this opinion."

In its Second Regular Session, the 80th General Assembly of the State of Missouri enacted into law Conference Committee Substitute for House Bill No. 1396 (effective August 13, 1980), which extends the presumption of dependence to widowers.

In these circumstances, we believe the presumption of dependence should be extended to Paul J. Wengler. *Jones v. State Highway Commission*, 557 S.W.2d 225, 231 (Mo. banc 1977).

The judgment of the trial court is affirmed and the cause remanded.

SEILER, WELLIVER, MORGAN and HIGGINS, JJ., concur.

DONNELLY, J., concurs in result in separate opinion filed.

BARDGETT, C. J., and RENDLEN, J., dissent.

DONNELLY, Judge, concurring in result.

In my view, the following should be noted of record:

(1) That the substance of what is now § 287.240, RSMo Supp.1976, was adopted by the people of Missouri at the November 2, 1926, election by vote of 561,898 *for* and 251,822 *against.*

(2) That on April 22, 1980, the United States Supreme Court again applied the *doctrine of subjectivism* and decided that the people of Missouri "acted unwisely * * *." *Ferguson v. Skrupa*, 372 U.S. 726, 730, 83 S.Ct. 1028, 1031, 10 L.Ed.2d 93 (1963).

(3) That this case is merely the latest of a mass of evidence from which a rational trier of fact could find beyond a reasonable doubt that a majority of the Court is determined to abrogate the *covenant of federalism.* *See Baker v. State*, 584 S.W.2d 65, 69–72 (Mo. banc 1979).

(4) That there is an alternative to the Lochnerian *compelling state interest* test. *The Carolene Products Footnote* articulates a model which would pay at least *some* deference to the concept of representative democracy. *U. S. v. Carolene Products Co.*, 304 U.S. 144, 152–153 n.4, 58 S.Ct. 778, 783–784 n.4 82 L.Ed. 1234 (1938). It would limit the Court's penchant for legislating to "those situations where representative government cannot be trusted * * *." John Hart Ely, *Democracy and Distrust* (Cambridge: Harvard University Press, 1980). *See also* Gunther, "Foreword: In Search of Evolving Doctrine on a Changing Court: A Model for a New Equal Protection," 86 *Harv.L.Rev.* 1 (1972); *Railway Express Agency, Inc. v. New York*, 336 U.S. 106, 112, 113, 115, 69 S.Ct. 463, 466, 467, 468, 93 L.Ed. 533 (1949) (Jackson, J., concurring).

I suppose an attempt should be made to persuade that *government by elites* is not what the Framers had in mind. *See* White, "Reflections on the role of the Supreme Court," 63 *Judicature* 162 (October, 1979). But, what useful purpose would it serve? To borrow from Senator Daniel Patrick Moynihan of New York: "What do you do when the Supreme Court is wrong?" *The Public Interest*, Fall 1979, p. 3.

As does Mr. Justice Powell, I "profoundly respect the Court as an institution." Powell, "What Really Goes on at the Supreme Court," 66 *American Bar Association Journal* 721, 723 (June, 1980). I merely question whether any court which persists in exercising a legislative function can survive for long *as an institution* in our system of government when the only meaningful device the people have to express their disapproval of court-enacted legislation is to "simply not abide by the decision." White, *supra*, at 173.

I concur only in the result.