Dear Ms. Smith:
This letter is in response to your question asking:
 What is the status of the Department of Labor and specifically the Division of Labor Standards in regard to the responsibility for enforcement of Chapter 291 and 292 -RSMo 1978.
You state in your opinion request that:
 Since reorganization in 1974 the Division has not had sufficient appropriation to hire enough inspectors to carry out the requirements of Chapter 292. Occasionally requests are received requesting an investigation of a specific work place. In addition, lawyers handling claims of employees will request the findings of the Division investigation.
Chapters 291 and 292, RSMo 1978,[1] impose certain duties on the Division of Industrial Inspection and the Inspection Section,[2]e.g., making inspections of certain business enterprises, Sections291.060.2, 292.280, and 292.540, making investigations of serious accidents, Section 291.140, ordering businesses to comply with health and safety standards, Section 292.180, and enforcing health and safety standards, Sections 292.410, 292.520, and 292.560.
Your opinion request indicates that the Inspection Section is not able to perform these statutory duties because the General Assembly has failed to appropriate the funds necessary to perform these duties. We assume that the General Assembly has been made aware of the situation.
The organic law of Missouri prohibits the withdrawal of money from the state treasury, except pursuant to an appropriation. Article III, Section 36, and Article IV, Section 28, Missouri Constitution. Once the unencumbered balance of all applicable appropriations have been expended, money for such purpose may not be ordered out of the state treasury by any authority of the State of Missouri. Stateex rel. Gibson v. State, 540 S.W.2d 17, 18 (Mo.Banc 1976), cert.denied, 430 U.S. 930 (1977).
 I. The Impossibility Defense
In Consolidated Apartment House Co. v. Mayor and City Councilof Baltimore, 131 Md. 523, 102 A. 920 (1917), a landowner sued the defendant city officers to recover damages for the city's failure to remove ashes and household refuse from the landowner's premises. Under the City of Baltimore's charter, the mayor, city council, and street commissioner had the duty to clean streets of refuse. The defendants constituting the board of estimates issued an order to the street commissioner to cease removing ashes and household refuse from dwelling houses of more than four stories or having an elevator. The landowner alleged that in each of the fiscal years 1913, 1914, and 1915, unexpended amounts of the city's "street cleaning" appropriations were returned to the city's general revenue fund.
The court applied the rule that before one may find a public officer liable for an omission or failure to perform a duty imposed by law, the plaintiff must show, inter alia, that the public officer has the ability with the resources furnished him to perform the duty. Because the landowner had not alleged that the unexpended balances of the street cleaning appropriations returned to the city's general revenue fund for the fiscal years 1913, 1914, and 1915, were sufficient to remove ashes and household refuse from dwellings with more than four stories or with elevators, the court dismissed the case as to the street commissioner. However, the court held that the board of estimates in issuing the order to the street commissioner to refuse to remove ashes and household refuse from dwellings with more than four stories or with elevators, were directing the street commissioner to violate the city charter. This being an affirmative act on the part of the board of estimates, the members of the board of estimates might be liable.
The lessons of the Consolidated Apartment House Co. case are two-fold: (1) The insufficiency of appropriations creates the valid defense of impossibility of performance; and (2) no administrative orders, rules, regulations, or policies may positively direct agency employees not to enforce or comply with the law. This means, of course, that the priorities of the agency may be established within the limits set by the General Assembly in its appropriation acts, the Governor in his budget, and the dictates of reason, and if a particular program exhausts the budgeted funds available for that purpose, the agency is excused from the performance of that program, even if that program or duty is imposed by law; however, the executive in charge may not issue directives to subordinates that positively direct that the law be violated or ignored.
 II. Sovereign and Official Immunity
Section 537.600, RSMo 1978, states:
 Such sovereign or governmental tort immunity as existed at common law in this state prior to September 12, 1977, except to the extent waived, abrogated or modified by statutes in effect prior to that date, shall remain in full force and effect; except that, the immunity of the public entity from liability and suit for compensatory damages for negligent acts or omissions is hereby expressly waived in the following instances:
 (1) Injuries directly resulting from the negligent acts or omissions by public employees arising out of the operation of motor vehicles within the course of their employment;
 (2) Injuries caused by the condition of a public entity's property if the plaintiff establishes that the property was in dangerous condition at the time of the injury, that the injury directly resulted from the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of harm of the kind of injury which was incurred, and that either a negligent or wrongful act or omission of an employee of the public entity within the course of his employment created the dangerous condition or a public entity had actual or constructive notice of the dangerous condition in sufficient time prior to the injury to have taken measures to protect against the dangerous condition.
In relevant part, this statute reinstates the law of sovereign immunity as it existed prior to the decision in Jones v. State HighwayCommission, 557 S.W.2d 225 (Mo.Banc 1977). The law prior toJones was that the state was immune from liability. Accordingly, the state is immune from liability for the failure to perform duties under Chapters 291 and 292.
Missouri law recognizes an official immunity that clothes the discretionary functions of public officials from liability, but makes public officials liable for torts committed during the course of their ministerial duties. Jackson v. Wilson, 581 S.W.2d 39, 42-43
(Mo.App. 1979). Although the performance of a duty imposed by law might generally be considered a ministerial duty, the budgeting decisions establishing the funding levels of various agency programs are discretionary and are shielded from liability by the official immunity doctrine.
Accordingly, we conclude that the Department of Labor and Industrial Relations has no responsibility to, or liability for failure to, perform the duties imposed by Chapters 291 and 292, when the appropriations for the enforcement of these statutes have been exhausted.
Very truly yours,
 JOHN ASHCROFT Attorney General
[1] All statutory references are to RSMo 1978, unless otherwise indicated.
[2] Section 286.005, RSMo Supp. 1983, transfers the duties of the Division of Industrial Inspection to the Inspection Section. The organization chart for the Department of Labor and Industrial Relations does not show an Inspection Section. Departmental Plan for the Department of Labor and Industrial Relations, App. C(1), RSMo Supp. 1983. We assume for purposes of this opinion that the Inspection Section is subsumed within the Division of Labor Standards.