ATTORNEY FOR APPELLANT(s): Bharat Varadachari, Katherine Elizabeth Jacobi, Co-Counsel, 211 North Broadway, Suite 2700, St. Louis, MO 63102, HEPLERBROOM, LLC.
ATTORNEY FOR RESPONDENT; Joan Marie Lockwood, Stephen Randall Woodley, Co-Counsel, 701 Market Street, Suite 800, GRAY, RITTER & GRAHAM, P.C., Christopher Arthur Brackman, Amicus Curiae ( Missouri Association of Defense Lawyers), 4215 S. Hocker, Ste 300, Independence, MO 64055, Theresa Ann Appelbaum, Amicus Curiae (Missouri Association of Trial Attorneys), 1924 Choteau Avenue, St. Louis, MO 63103, The Law Offices of Theresa A. Appelbaum.
Honorable Mary K. Hoff
Bi-State Development Agency d/b/a Metro ("Bi-State") and Cedric K. Allen ("Allen") (collectively "Appellants") appeal from the Amended Judgment ("Judgment") entered following a jury verdict in favor of Dawn Brancati ("Brancati") on her personal-injury lawsuit against Appellants. We affirm.
Factual and Procedural Background
On January 20, 2016, Brancati filed a personal injury claim for damages against Bi-State and its employee driver, Allen. The accident that resulted in Brancati's injuries occurred on February 2, 2015,[1] when Allen was driving a Metro Call-A-Ride Shuttle that collided with Brancati, who was riding a bicycle. The collision occurred at an intersection where a marked crosswalk controlled by a stop sign had yielded the right of way to Brancati. Bi-State admitted that Allen was its employee and that he was acting in the scope and course of his employment at the time of the collision. Following a jury trial, *630 a verdict was returned in favor of Brancati and against Bi-State and Allen, jointly and severally, allocating 100% fault to Appellants and awarding damages of $625,000.
Viewed in the light most favorable to the verdict, the following evidence was adduced at trial: At approximately 5:40 pm on February 2, 2015, Brancati was riding her bicycle wearing a helmet and with headlights illuminated on a bicycle path/sidewalk along Forsyth Boulevard heading east. Prior to the collision, Brancati was at an intersection at Forsyth and Tolman Way, and her bicycle and Appellants' vehicle were stopped. Brancati testified that she stopped first, then the bus stopped. Brancati testified that when she stopped, she had complete full vision of the bus and stopped around the Tolman Way sign for a few seconds before proceeding into the intersection. Brancati testified she had the right of way. Brancati proceeded into the crosswalk when the impact occurred. All parties stipulated Brancati had the right of way. Allen, the driver, testified that he never saw Brancati prior to impact and did not see Brancati or her bike until he hit her in the crosswalk. Allen testified that he did not realize he hit Brancati until he heard the screams of the bus passengers.
At trial, on September 18, 2017, there was extensive evidence presented regarding Brancati's physical injuries. The evidence showed that as a result of the collision, Brancati broke both legs, fracturing her right fibula, displacing her left tibia and fracturing her left fibular shaft. To stabilize the left leg fracture enough so that she could bear weight on the leg, Brancati had to undergo surgery and have a metal rod with interlocking screws permanently inserted that extended from just below the knee to slightly above the ankle joint. Even after surgery, Brancati's severe fractures caused pain and an altered gait. There was evidence Brancati might require future surgery to remove the hardware, in order to lessen pain and nerve impairment.
Both of Brancati's treating physicians testified that her injuries were serious and permanent. Dr. Christopher McAndrew ("Dr. McAndrew"), an orthopedic surgeon, testified the injury and type of fractures she sustained typically causes nerve pain, muscle pain and swelling and that Brancati can expect to have pain, on and off, for the rest of her life. Dr. McAndrew testified that the leg trauma and physical injuries Brancati sustained were "significant" resulting in "permanent impairment."
Similarly, Dr. Nadya Swedan ("Dr. Swedan"), a physical medicine and rehabilitation specialist, testified that Brancati suffered trauma to both legs, causing swelling, nerve and muscle pain. Dr. Swedan further testified that Brancati's gait is compromised, which can result in arthritis and problems with the hip, knee, and hamstring. Dr. Swedan testified that Brancati's physical impairments and deficits are permanent and that to maintain the status quo, she has to continually undergo rehabilitation.
Brancati testified that in order to accommodate for her injuries, she had to make lifestyle adjustments. Brancati testified that prior to the 2015 incident she was an avid runner and that returning to running post-accident, was very important to her. She testified that she did not want the collision to define her or limit what she enjoyed but that because of her physical injuries, she runs shorter distances and at a slower pace, has more pain during runs, and no longer participates in formal races.[2] She testified that she now suffers from leg *631 fatigue and permanent scarring and cannot carry heavy items, including groceries, for long distances without experiencing pain. She ices and elevates her legs regularly and takes medication to reduce swelling and nerve and muscle pain.
Brancati testified that prior to the 2015 collision, she had a history that included anxiety, depression, and other stress-related issues and that she had treated with two counselors and a psychiatrist, all of whom were disclosed during discovery. However, Brancati testified that the collision caused her "new" anxiety and nightmares. She testified that she saw a counselor, who had also treated her in the past, in order to develop coping mechanisms, and that, as a result, in the two years since the accident she had "improved tremendously" because of these coping mechanisms. Appellants did not object during this testimony, and nowhere during Brancati's testimony or during her case-in-chief by any medical expert was there any mention that the bus crash caused Post Traumatic Stress Disorder "PTSD" or any other specific mental health condition.
Only Merry Weitzman ("Ms. Weitzman"), a licensed clinical social worker, testified by deposition regarding Brancati's diagnosis of PTSD (i.e. that the bus crash exacerbated or aggravated Brancati's PTSD) and the pre-2015 counseling she had provided to Brancati. Brancati did not introduce Ms. Weitzman's deposition testimony; instead, Appellants introduced it themselves at trial despite having earlier filed a pre-trial motion[3] to exclude it.
Regarding her counseling and psychiatric treatment, Brancati disclosed in discovery Dr. Marcie Garland, a psychiatrist, who she saw prior to the bus collision and participated in one telephone conference with Brancati afterward. She also disclosed Marcia McCabe, PhD, who saw Brancati prior to the collision. Also disclosed was Ms. Weitzman, who treated Brancati in 2013 and for 5 sessions following the collision.
Brancati's treatment with Dr. Sonya Vieira ("Dr. Vieira"), a New York psychiatrist, was not disclosed during discovery because Brancati's counsel did not become aware of treatment Brancati had received until the evening of Tuesday, September 12, 2017. The following day, Brancati's counsel informed Appellants of the psychiatrist's identity, and provided the four dates Brancati saw or spoke with Dr. Vieira, i.e., January 27, 2017, February 15, 2017, May 1, 2017 and September 11,2017.[4]
On September 13, 2017, Appellants filed a Supplemental Motion in Limine, Motion to Strike and Motion for Sanctions for the late disclosure of Dr. Vieira. In response, Brancati stipulated not to use Dr. Vieira as an expert or fact witness, nor to offer her records and bills into evidence. In addition, Brancati would not discuss any care and treatment by Dr. Vieira in her testimony. Brancati's counsel suggested that if Appellants or the trial court believed Appellants were prejudiced, a continuance should be granted to allow Appellants time to depose Dr. Vieira and conduct any additional needed discovery. Appellants did not request a continuance and declined any additional discovery.
On September 15, 2017, the trial court granted Appellants' Motion in part and denied it in part. Appellants were permitted to inquire into the timeliness of the *632 disclosure of Dr. Vieira during trial, which they did. Further, Brancati agreed to not mention Dr. Vieira or Ms. Weitzman in opening statement. Brancati's counsel did not mention PTSD in opening nor did Brancati herself testify about the diagnosis, and at no time during direct examination did Brancati mention Dr. Vieira. However, Appellants themselves raised Brancati's treatment by Dr. Vieira during cross-examination. On redirect, Brancati testified that her treatment with Dr. Vieira was unrelated to the collision.
With respect to the jury instructions, Appellants offered the following verdict director on the issue of comparative fault:
Instruction No. C
In your verdict you must assess a percentage of fault to plaintiff, Dawn Brancati, if you believe:
First, either:
plaintiff, Dawn Brancati, failed to keep a careful lookout, or
plaintiff, Dawn Brancati, left a place of safety and traveled into the immediate path of Defendants' vehicle; and
Second, plaintiff, Dawn Brancati, in any one or more of the respects submitted in Paragraph
First, was thereby negligent, and
Third, such negligence of plaintiff, Dawn Brancati, directly caused or directly contributed to cause any damage plaintiff may have sustained.
This instruction was refused by the trial court. Brancati objected to any comparative fault submission as lacking evidentiary support.
The final modified instruction submitted to the jury on the issue of fault read as follows:
Instruction No. 10
In your verdict you must assess a percentage of fault to plaintiff, Dawn Brancati, if you believe:
First, plaintiff, Dawn Brancati, failed to keep a careful lookout, and
Second, plaintiff, Dawn Brancati, was thereby negligent, and
Third, such negligence directly caused or directly contributed to cause damage to plaintiff.
On the issue of damages, Brancati filed a pre-trial motion to determine whether recently enacted Section 490.715.5, RSMo Supp. 2017[5] applied retroactively to this case, and to determine what evidence of medical bills would be allowed into evidence. The trial court ruled that Section 490.715.5, as amended, did not apply to the instant case and that the parties could offer evidence of the value of medical treatment by allowing both the amount billed as well as the amount charged into evidence.
The medical bills submitted, all of which were incurred prior to August 28, 2017, were admitted by stipulation as to amounts and provided that the "charged" medical bills were $77,515.48 while the "paid or owed" amount to satisfy the financial obligation was $40,842.95. Dr. McAndrew, Dr. Swedan and the stipulation established that the bills were caused by the injuries sustained in the accident. The stipulation was read into evidence at the close of Brancati's case.
On September 25, 2017, the jury returned a unanimous verdict against Appellants Bi-State and Allen in the amount of $625,000, and the court entered judgment on the verdict. Thereafter, Appellants filed a Motion for Judgment Notwithstanding the Verdict and Alternative Motion for New Trial or Remittitur. Brancati filed a *633 Supplemental Response following the hearing opposing application of a cap on damages to either Bi-State or Allen.
On December 22, 2017, the trial court entered its Judgment limiting Bi-State's financial responsibility in the joint and several judgment to the statutory amount of $414,418 plus interest and costs, but declined to reduce or limit the judgment against Allen. This appeal follows. Additional facts will be discussed where relevant to Appellants' points on appeal.
Section 490.715
In Point I, Appellants argue the trial court erred in denying their Motion for New Trial, because Section 490.715, as amended and effective August 28, 2017, applied to limit the evidence admissible regarding the cost of Brancati's medical care to the amount paid, not to the amount charged. In addition, Appellants allege that Section 490.715.5, in its amended form, is an evidentiary rule that is procedural in nature and therefore applies retrospectively.
Statutory interpretation is an issue of law that we review de novo. Spradling v. SSM Health Care St. Louis, 313 S.W.3d 683, 686 (Mo. banc 2010). Our task in statutory interpretation is to discern the intent of the legislature from the language used. Spradling, 313 S.W.3d at 686. In doing so, we consider the plain meaning of the language. Id. Prior to August 28, 2017, Section 490.715, RSMo 2000, provided:
1. No evidence of collateral sources shall be admissible other than such evidence provided for in this section.
2. If prior to trial a defendant or his or her insurer or authorized representative, or any combination of them, pays all or any part of a plaintiff's special damages, the defendant may introduce evidence that some other person other than the plaintiff has paid those amounts. The evidence shall not identify any person having made such payments.
3. If a defendant introduces evidence described in subsection 2 of this section, such introduction shall constitute a waiver of any right to a credit against a judgment pursuant to section 490.710.
4. This section does not require the exclusion of evidence admissible for another proper purpose.
5. (1) Parties may introduce evidence of the value of the medical treatment rendered to a party that was reasonable, necessary and a proximate result of the negligence of any party.
(2) In determining the value of the medical treatment rendered, there shall be a rebuttable presumption that the dollar amount necessary to satisfy the financial obligation to the health care provider represents the value of the medical treatment rendered. Upon motion of any party, the court may determine, outside the hearing of the jury, the value of the medical treatment rendered based upon additional evidence, including but not limited to:
(a) The medical bills incurred by a party;
(b) The amount actually paid for medical treatment rendered to a party;
(c) The amount or estimate of the amount of medical bills not paid which such party is obligated to pay to any entity in the event of a recovery.
Effective August 28, 2017, the statute was amended as follows:
1. No evidence of collateral sources, or payments rendered under subsection 2 of this section, shall be admissible other than such evidence provided for in this section.
2. If prior to trial a defendant or his or her insurer or authorized representative, or any combination of them, pays all or *634 any part of a plaintiff's special damages, then any portion of a plaintiff's claims for special damages that are satisfied by a payment from a defendant or the defendant's insurer or authorized representative, or any combination of them, are not recoverable from that defendant.
3. If such payments described in subsection 2 of this section are included in a plaintiff's claim for special damages at trial, the defendant who made the payment, or on whose behalf the payment was made, shall be entitled to deduct and receive a credit for such payments from any judgment as provided for in section 490.710.
4. This section does not require the exclusion of evidence admissible for another proper purpose.
5. (1) Except as provided in subsection 2 of this section, parties may introduce evidence of the actual cost of the medical care or treatment rendered to a plaintiff or a patient whose care is at issue. Actual cost of the medical care or treatment shall be reasonable, necessary and a proximate result of the negligence or fault of any party.
(2) For purposes of this subsection, the phrase "actual cost of the medical care or treatment" shall be defined as the sum of money not to exceed the dollar amounts paid by or on behalf of a plaintiff or a patient whose care is at issue plus any remaining dollar amount necessary to satisfy the financial obligation for medical care or treatment by a health care provider after adjustment for any contractual discounts, price reductions or write-off by a person or entity.
The 2017 amended statute addresses the collateral source rule and then, in Section 5, narrowly defines an exception to the collateral source rule by allowing evidence of the "actual cost of the medical care," which would otherwise be omitted. "Application of the collateral source rule prevents an alleged tortfeasor from attempting to introduce evidence at trial that the plaintiff's damages will be covered, in whole or in part, by the plaintiff's insurance or another source." Roberts v. BJC Health System, 391 S.W.3d 433, 439 (Mo. banc 2013). The policy behind the collateral source rule expresses is that "a wrongdoer should not enjoy reduced liability because the person he harmed was protected from expenditures by insurance coverage or by payment from another source." Roberts, 391 S.W.3d at 439.
Here, Section 490.715 provides that, "[n]o evidence of collateral sources or payments made under subsection 2 of this statute shall be admissible other than such evidence provided for in this section." Section 490.715.1.
Sections 2 and 3 address payments made by a defendant or the agent of a defendant. These sections have no application to the collateral source rule and do not prohibit evidence of the amount charged by a health care provider nor do they address the admission of medical bills.
Section 4 provides that the statute does not require the exclusion of evidence admissible for another purpose; therefore, Section 4 does not prohibit evidence introduced which is not an exclusion to the collateral source rule.
Finally, Section 5 (which provides the exception to the collateral source rule as indicated in Section 1) provides that the actual costs of medical treatment "may " be offered into evidence, if the actual costs are shown to be "reasonable, necessary, and a proximate result of the negligence or fault of any party." Section 490.715.5. Subsection 2 of Section 5 then defines the phrase "actual cost of medical care or treatment." Id. However, Section 5 does *635 not preclude a plaintiff from introducing the amounts charged by the health care providers. It merely provides a means for a party to introduce the "actual costs of medical treatment." In fact, Section 4 specifically states that the statute does not require the exclusion of evidence admissible for another purpose.
The legislature's use of the term "may" makes it clear that the legislature was not indicating the actual costs of medical treatment was the only evidence of medical bills to be allowed. Rather, Section 5 simply provides a means for introducing evidence of the "actual cost of medical care or treatment" which would otherwise be inadmissible due to the collateral source rule. There is no language in the statute mandating that the actual cost of medical care and treatment as defined by Section 5, subsection 2 is the only allowable evidence of medical bills.
Here, prior to trial, both parties filed motions and briefs regarding what evidence would be admissible on the issue of medical bills. The trial court determined that consistent with Missouri caselaw,[6] both the amount billed and the amount paid could be introduced into evidence. At trial, these amounts were admitted by stipulation of the parties.
After trial, in their Motion for New Trial, Appellants argued that they were prejudiced by the trial court's refusal to apply the 2017 amended statute to the instant case because evidence of Brancati's damages, setting forth $77,515.48 as the amount of medical charges, was erroneously admitted and materially affected the merits of the action. Appellants further argued that the evidence in the case should have been limited to the amount paid and owed by Brancati, which was $40,842.95.
As noted earlier, statutory interpretation is a legal question we review de novo. Spradling, 313 S.W.3d at 686. We find that contrary to Appellants' assertions, the amended Section 490.715, by its plain language, does not limit evidence of medical charges to the amount paid. Moreover, nothing in the amended statute states that the amount charged for the medical bills cannot be introduced or recovered. Section 490.715.5 states that parties "may introduce evidence of the actual cost of the medical care or treatment." [Emphasis added.] Even if "actual cost" is defined as Appellants imply, as the amount paid, the statute does not preclude evidence of the amount charged. Nowhere does the statute state that the "actual cost" of medical bills is the "only" evidence of medical bills that may be introduced.
Therefore, we find that the trial court did not err and there was no prejudice in allowing the "amount charged" for Brancati's medical bills into evidence because the "amount charged" could be admitted under either the former or the amended version of the statute. As such, the trial court did not err in denying Appellants' Motion for New Trial. Point I is denied.
Motion for Remittitur
In Point II, Appellants argue the trial court erred in denying their Motion for *636 Remittitur with respect to Allen, because Section 537.610.2 RSMo 2000[7] limits recovery, in that public employees like Allen "should be" protected by sovereign immunity to the same extent as their employers. They further argue that the statutory cap set forth in Section 537.610.2 on the waiver of sovereign immunity "should" apply to public employees as well as to their employers. We disagree.
Statutory interpretation is a legal question which we review de novo. Watts v. Lester E. Cox Med. Ctr., 376 S.W.3d 633, 637 (Mo. banc 2012).
"[S]overeign immunity is a tort protection for governmental entities" that has been a long-applied doctrine in Missouri. Southers v. City of Farmington, 263 S.W.3d 603, 610 (Mo. banc 2008). The protection is codified by Sections 537.600 to 537.650. As a public entity, Bi-State was entitled to sovereign immunity from tort liability except to the extent immunity was waived under Section 537.600. As relevant in this case, immunity was waived for: "Injuries directly resulting from negligent acts or omissions by public employees arising out of the operation of motor vehicles or motorized vehicles within the course of their employment." Section 537.600.1(1). Here, by its plain language, Section 537.600 applies to the "public entity," Bi-State, and not its employee, Allen. Additionally, by its plain language, it is clear that the statutory immunity afforded Bi-State under the statute does not apply to its employee driver.
Section 537.610 provides that "[t]he liability of the state and its public entities on claims within the scope of [Sections] 537.600 to 537.650, shall not exceed two million dollars for all claims arising out of a single accident or occurrence and shall not exceed three hundred thousand dollars for any one person in a single accident or occurrence, except for those claims governed by the provisions of the Missouri workers' compensation law, chapter 287." Section 537.610.2. Section 537.610.5 further provides for annual adjustments on the limit amounts listed, and, at the time of the trial court's amended judgment in 2017, the limit amount for a single accident or occurrence was $414,418 (rather than $300,000). That figure was stipulated to in the trial court by the parties.
Here, the jury awarded Brancati damages in the amount $625,000 and found Bi-State and its employee driver, Allen, jointly and severally liable. Following trial, Appellants filed a Motion for Remittitur arguing, inter alia , that they were entitled to a reduction of the verdict because "the sovereign immunity provision limits Defendants' liability to $414,418.00, and therefore, the verdict must be reduced to at least that amount as a matter of law."
On December 22, 2017, the trial court entered its amended judgment granting Appellants' Motion for Remittitur with respect to Bi-State but denying the motion with respect to Allen:
Under the express language of Mo. Rev. Stat. § 537.600 and § 537.610 RSMo. and the authority of Cottey v. Schmitter, 24 S.W.3d 126 (Mo. App. W.D. 2000) and Cole ex rel. Cole v. Warren Cty. R-III School Dist., 23 S.W.3d 756 (Mo. App. E.D. 2000), the Court finds that the statutory immunity for claims over $414,418.00 does not apply to Cedric Allen. Accordingly, the judgment against Cedric Allen shall not be reduced or limited in any manner.
Appellants contend that the trial court erred in denying their motion because the verdict must be reduced by the statutory limitation of damages. However, *637 as noted above, the damage cap set forth in Section 537.610.2 on the waiver of sovereign immunity does not apply to public employees. We find State ex rel. Trimble v. Ryan, 745 S.W.2d 672, 675 (Mo. banc 1988) directly on point. In Trimble, an action arose out of alleged negligence in a driver's operation of a Bi-State bus. The Missouri Supreme Court concluded that Bi-State was entitled to sovereign immunity under Section 537.600 and a reduction of the damage award under Section 537.610 ; however, the Court specifically held that Bi-State's driver was not entitled to a reduction:
Finally, we address relators' contention that the trial court exceeded its jurisdiction in limiting recovery against the bus driver to $100,000. We do not interpret the order as having that effect, but to avoid confusion we direct that it be modified so that the damage award limitation clearly applies only to Bi-State. The bus driver here is not protected by "official immunity," which precludes tort claims arising from discretionary acts or functions of the public officials engaged in the performance of their official duties. This driver, ... was not a public official performing a discretionary act, but rather was engaged in the ministerial matter of navigating a left turn."
Id. at 675. More recent caselaw has similarly found that the immunity provision does not apply to the agent-employee of the government entity. See Cottey v. Schmitter, 24 S.W.3d 126, 128 (Mo. App. W.D. 2000) (Provisions of sovereign immunity statute that limited liability of Missouri Highway and Transportation Commission (MHTC) in negligence suit brought against MHTC and operator of snow plow by passenger of vehicle for injuries sustained when vehicle collided with snow plow did not apply to limit operator's liability); see also Cole ex rel. Cole v. Warren Cty. R-III Sch. Dist., 23 S.W.3d 756, 761 (Mo. App. E.D. 2000) (Bus driver employed by school district was not entitled to have verdict against him in personal injury action arising from bus accident reduced to maximum liability under statute limiting liability of public entities, as school district's sovereign immunity was not transferrable to its employee.)
While Appellants concede that the statutory cap in Section 537.610.2 has been held to apply only to the sovereign and not the individual employees of the sovereign entity, Appellants nonetheless argue that this Court should overrule its prior decision in Cole and cap the driver's liability at $414,418. We decline to do so.
Therefore, because Missouri law clearly provides that the statutory cap set forth in Section 537.610.2 does not apply to public employees arising out of the operation of motor vehicles within the course of their employment, the trial court did not err in denying Appellants' Motion for Remittitur with respect to Allen. Point II is denied.
Sanctions
In Point III, Appellants argue the trial court erred and abused its discretion in failing to "adequately sanction" Brancati for not disclosing Dr. Sonya Vieira ("Dr. Vieira"), her treating psychiatrist, until the eve of trial, as this violated the rules of discovery, denied Appellants an opportunity for a fair trial, and resulted in prejudice. We disagree.
"The trial court has broad discretion to control discovery." Wilkerson v. Prelutsky, 943 S.W.2d 643, 647 (Mo. banc 1997). "This discretion extends to the trial court's choice of remedies in response to the non-disclosure of evidence or witnesses during discovery." Wilkerson, 943 S.W.2d at 647-648. "We may disturb the trial court's discovery sanctions decision 'only upon a clear showing of abuse of discretion.' "
*638 Fairbanks v. Weitzman, 13 S.W.3d 313, 327 (Mo. App. E.D. 2000) (quoting Zerjav v. Schneider, 998 S.W.2d 44, 45 (Mo. App. E.D. 1999) ). "Judicial discretion is abused when the trial court's ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice." Wilkerson, 943 S.W.2d at 648.
Additionally, Rule 61.01(b) authorizes the trial court to "take such action in regard to the failure [to answer interrogatories] as are just," including but not limited to, entering "an order striking pleadings or parts thereof or dismissing the action or proceeding or any part thereof...." When a party fails to produce documents, Rule 61.01(d) also authorizes the trial court to "take such action in regard to the failure [to produce documents] as are just," including but not limited to:
a. Enter an order refusing to allow the disobedient party to support or oppose designated claims or defenses or prohibiting the disobedient party from introducing designated matters in evidence;
b. Enter an order striking pleadings or parts thereof or staying further proceedings until the order is obeyed or dismissing the action or proceeding or any part thereof or render a judgment by default against the disobedient party;
c. Enter an order treating as a contempt of court the failure to obey; or
d. Enter an order requiring the party failing to obey the order or the attorney advising the party or both to pay the reasonable expenses, including attorney fees, caused by the failure unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.
Rule 61.01(d). Trial courts are vested with broad discretion in the imposition of Rule 61 sanctions and exercise of that discretion will not be disturbed on review unless it is unjust under the circumstances. White v. City of Ladue, 422 S.W.3d 439, 453-54 (Mo. App. E.D. 2013).
Here, the trial in the underlying case began on Monday, September 18, 2017. On the evening of Tuesday, September 12, 2017, counsel for Brancati learned for the first time of treatment Brancati received from Dr. Vieira, a psychiatrist in New York. The next day, Brancati's counsel notified Appellants' counsel and provided both the name of Dr. Vieira and her dates of service.
Appellants argue that through Brancati's untimely disclosure of her treating psychiatrist a few days before trial, they "were caused to suffer unfair and unnecessary prejudice on the critical issue of damages." As such, Appellants contend that they were entitled to all of the relief that they requested prior to trial. Contrary to the Appellants' contention that they were prejudiced by the late disclosure, however, the record reveals that during discovery, Brancati timely disclosed her preexisting stress, depression and anxiety in answers to interrogatories. Moreover, Brancati disclosed psychiatrists and counselors she had seen in the past for issues primarily unrelated to the accident. The record reveals that at no time did Brancati attempt to endorse Dr. Vieira as a potential trial witness.
On September 13, 2017, in response to Brancati's identification of Dr. Vieira, Appellants filed a Supplemental Motion in Limine, Motion to Strike and Motion for Sanctions. In their motion, Appellants argued that disclosure of Dr. Vieira was untimely and improper and as such, sanctions pursuant to Rule 61.01(b) and Rule *639 61.01(d) were appropriate. Specifically, Appellants requested that:
1. The untimely and improper disclosure of Dr. Sonya Vieira, as either a fact witness or expert witness, in the case be stricken;
2. Dr. Sonya Vieira be barred from providing any testimony, as either a fact witness or expert witness, in the trial of this matter;
3. The testimony of Merry Weitzman, LCSW, be stricken and excluded from trial;
4. Any evidence or testimony addressing issues regarding Plaintiff's anxiety, depression, her diagnosis of Post-Traumatic Stress Disorder, psychiatric treatment, or counseling sessions as a result of and after the accident be stricken and excluded from trial;
5. Any evidence, reference, or testimony, as to the amount or cost of any treatment provided by either Dr. Sonya Vieira or Merry Weitzman, LCSW, be stricken and excluded from trial;
6. Plaintiff reimburse Defendants for all of their costs and expenses associated with the deposition of Merry Weitzman, including attorneys' fees and expenses, including but not limited to, costs for service, subpoena of witness, retention of local counsel, airfare, videographer, court report, and overnight accommodation.
In response to the motion, Brancati's counsel agreed not to use Dr. Vieira as an expert or as a fact witness, or to offer any testimony, records or bills from any such treatment, and to instruct Brancati not to discuss any care and treatment by Dr. Vieira. Further, Brancati included in her response the following statement: "Plaintiff does not want to see defendants disadvantaged. If this Court, in its discretion, believes defendants have been prejudiced, this Court may continue this matter to allow defendants to depose Dr. Vieira and conduct whatever additional discovery defendants conclude is necessary."[8]
Appellants' motion was argued before the trial court on September 15, 2017. The same day, the trial court entered its "Order" ruling as follows with respect to the motion:
Defendants' Supplemental Motion in Limine Granted in Part and Denied in part. Defendants are permitted to inquire into timeliness of Plaintiff's disclosure of Dr. Vieira. Plaintiff allowed to testify as to issues concerning PTSD related issues.
Defendants['] Motion to Strike is Denied.
Defendants['] Motion for Sanctions taken under submission.
The record before us does not disclose that Appellants ever renewed or asked the court to rule on the Motion for Sanctions. It is the appellant's responsibility to prepare the record on appeal and matters omitted from the record will not be presumed to be favorable to the appellant. Rule 81.12; Wilkerson, 943 S.W.2d at 649. Therefore, regarding Appellants' arguments with respect to the Motion for Sanctions, there is no trial court action for this Court to review on appeal.
Similarly, regarding the Motion to Strike, the only objections to evidence that can be considered on appeal are those properly raised in the trial court. Rule 84.13(a); Wilkerson, 943 S.W.2d at 650. "[A]llegations of error not presented to or expressly decided by the trial court shall *640 not be considered in any civil appeal from a jury tried case." Rule 84.13(a). Here, Appellants have not identified specific evidence they wanted excluded during trial or when they objected to it.
Regarding the trial court's ruling on the Motion in Limine, such a ruling is interlocutory and subject to change during trial; thus, it preserves nothing for appeal. Hancock v. Shook, 100 S.W.3d 786, 802 (Mo. banc 2003). "[A] party must object at the time of the alleged error to preserve the issue for appellate review." Berra v. Danter, 299 S.W.3d 690, 695 (Mo. App. E.D. 2009). This was not done here. Appellants do not cite to where they objected to evidence when offered. Even if preserved, however, Appellants were not prejudiced by the ruling of the trial court. Dr. Vieira did not testify, nor were any of her records or bills introduced into evidence. Further, the trial court allowed Appellants to cross-examine Brancati on the timeliness of the disclosure. Finally, the record clearly shows that it was Appellants themselves who introduced Brancati's treatment with Dr. Vieira. "A party may not complain on appeal that the trial court erred in admitting evidence if the complaining party was the first to admit evidence of that type." St. Louis Cnty. v. River Bend Estates Homeowners' Ass'n, 408 S.W.3d 116, 125 (Mo. banc 2013).
Regarding the testimony of Ms. Weitzman, the record shows that Brancati did not introduce Ms. Weitzman's deposition during her case in chief. After Brancati rested, however, Appellants themselves played Ms. Weitzman's video deposition. Appellants offered both the deposition transcript of Ms. Weitzman and related exhibits. While the cost of Dr. Vieira's treatment was stricken, which Brancati stipulated she would not put into evidence, and Brancati also agreed to remove the bills of Ms. Weitzman that totaled $875, it was Appellants who introduced the bills of Ms. Weitzman. Again, Appellants have waived this claim of error. St. Louis Cnty., 408 S.W.3d at 125.
Appellants also argue that Brancati's mental health was a "central issue" in the case because her mental health was directly connected to her ability to run, which Brancati discussed during direct examination. However, the record reveals that Brancati's testimony focused primarily on the physical effects of the injury rather than on her psychological condition. On direct examination, the only mental health testimony focused on nightmares Brancati had after getting hit by the bus and five sessions with Ms. Weitzman where she discussed coping mechanisms. Brancati testified that her anxiety had "absolutely" gotten better as a result of the coping mechanisms and that she had "improved tremendously" mentally since the collision. Brancati did not claim that her inability to run after the accident caused psychological trauma. In fact, the evidence was that Brancati was back to running within two months of the accident. At the time of trial, she testified that she was running 4-5 days per week. Also, Brancati's two treating physicians, Dr. McAndrew and Dr. Swedan, testified about her physical injuries but never testified about PTSD.
More importantly, nowhere in their supplemental Motion in Limine, Motion to Strike and Motion for Sanctions do Appellants seek to exclude evidence of running, and at no time during Brancati's testimony did they object to evidence of running or to Brancati's anxiety, or nightmares. Again, it was Appellants' obligation to preserve error by objecting specifically, which they did not do.
Here, it was appropriate to exclude Dr. Vieira's testimony and records and to allow *641 Appellants to question Brancati regarding the disclosure. Appellants did not seek a trial continuance which would have allowed them further discovery opportunities. There is no evidence here that Dr. Vieira's treatment was related and in fact, as argued above, Appellants themselves moved pre-trial to prohibit any such testimony. The only mention of PTSD came from Ms. Weitzman, testimony introduced by Appellants.
With regard to Appellants's claim that Brancati changed her position during trial and claimed the treatment with Dr. Vieira was not related to this incident, we agree that this argument is based on the presumption that the treatment by Dr. Vieira was related to the bus crash. While the record does indicate that Ms. Weitzman, who was seeing Brancati before the accident, also treated her for five sessions following the crash and during this time gave Brancati the name of Dr. Vieira, it does not automatically follow that the referral by Ms. Weitzman to Dr. Vieira was related to the accident.
Also unconvincing is Appellants' argument that Brancati deliberately gave false testimony because she related the counseling sessions of Ms. Weitzman but not the treatment by Dr. Vieira. Here, the record clearly indicates that Brancati disclosed all the psychiatrists and psychologists that had seen her in the past. Brancati also described the treatment by Ms. Weitzman both before and after the bus crash, including the stress, anxiety, and nightmares she had following the bus collision and her need to seek counseling. She did not give false testimony, or change her position at trial, as Appellants insist.
Upon review of the record, we do not find the trial court abused its discretion by granting in part and denying in part Appellants' motion, nor did Appellants suffer prejudice. There was no evidence that Brancati sought an unfair advantage by disclosing Dr. Vieira just before trial and presenting her testimony to the jury. In fact, the record shows that Brancati never intended nor attempted to present testimony from Dr. Vieira. Additionally, Appellants waived objection to any testimony they sought to exclude in their pre-trial motion as any alleged error was invited by Appellants themselves. Point III is denied.
Instruction No. C
In Point IV, Appellants argue that the trial court erred in refusing their comparative-fault verdict-director, Instruction No. C, because Appellants were prejudiced by its omission in the final instructions, as Instruction No. C was supported by the evidence and consistent with Missouri law. We disagree.
Whether a jury was instructed properly is a question of law that we review de novo. Klotz v. St. Anthony's Medical Center, 311 S.W.3d 752, 766 (Mo. banc 2010). Our review is conducted in the light most favorable to the submission of the instruction, and if the instruction is supportable by any theory, then its submission is proper. Id. We will reverse instructional errors only if they resulted in prejudice materially affecting the merits of the action. Id.
"A 'roving commission' occurs when an instruction assumes a disputed fact or submits an abstract legal question that allows the jury 'to roam freely through the evidence and choose any facts which suit [ ] its fancy or its perception of logic' to impose liability." Id. (quoting Scanwell Freight Express STL, Inc. v. Chan, 162 S.W.3d 477, 482 (Mo. banc 2005) ).
Here, Appellants submitted Instruction No. C, which was refused by the trial court. Instruction No. C stated as follows:
*642 In your verdict you must assess a percentage of fault to plaintiff, Dawn Brancati, if you believe:
First, either:
plaintiff, Dawn Brancati, failed to keep a careful lookout, or
plaintiff, Dawn Brancati, left a place of safety and traveled into the immediate path of Defendants' vehicle; and
Second, plaintiff, Dawn Brancati, in any one or more of the respects submitted in Paragraph
First, was thereby negligent, and
Third, such negligence of plaintiff, Dawn Brancati, directly caused or directly contributed to cause any damage plaintiff may have sustained.
Instruction No. 10, patterned after MAI 17.05, was ultimately submitted to the jury and stated as follows:
In your verdict you must assess a percentage of fault to plaintiff, Dawn Brancati, if you believe:
First, plaintiff, Dawn Brancati, failed to keep a careful lookout, and
Second, plaintiff, Dawn Brancati, was thereby negligent, and
Third, such negligence directly caused or directly contributed to cause damage to plaintiff.
There is no Missouri Approved Instruction concerning a theory of comparative fault for "leaving a place of safety" in the context of a cyclist-vehicular collision at a marked crosswalk that contained a stop sign for the bus driver and where it was conceded the cyclist had the right of way.[9] "When there is no applicable MAI instruction, a non-MAI instruction may be given if it conforms to the requirements of Rule 70.02 in that it is simple, brief, impartial and free from argument." Edwards v. Gerstein, 363 S.W.3d 155, 166 (Mo. App. W.D. 2012). When giving a non-MAI instruction, "the court must adopt an instruction that follows the substantive law and can be readily understood by the jury." Edwards, 363 S.W.3d at 166. "A proper instruction submits only the ultimate facts, not evidentiary details, to avoid undue emphasis of certain evidence, confusion, and the danger of favoring one party over another." Twin Chimneys Homeowners Ass'n v. J.E. Jones Const., 168 S.W.3d 488, 497-98 (Mo. App. E.D. 2005). This means the theory submitted must be one recognized under Missouri law and the ultimate facts necessary for recovery under that theory must be included in the instruction.
Here, refused Instruction No. C was defective for a number of reasons. First, the phrase "place of safety" is argumentative and irrelevant in this case. There was no "oncoming vehicle" of which Brancati had actual or constructive notice; there was only a vehicle that came to a stop after Brancati stopped. Second, there was no "place of safety"[10] because the parties agreed that Brancati had the right of way. Third, there was no evidence that *643 Brancati was in the "immediate path of Defendants' vehicle" or that she voluntarily and knowingly moved into the path of a moving vehicle.[11] The only evidence presented at trial was that both Brancati and the bus were stopped at the intersection and that Brancati proceeded cautiously into the intersection once she confirmed that the bus had stopped and that she had the right of way to proceed.
Even assuming a place of safety existed under these facts, the instruction did not contain language that defined or explained what the place of safety was, where Brancati left the place of safety from, or when she left the place of safety. Under Instruction No. C, the jurors would have been free to roam through the evidence to decide what might be a place of safety during an undefined period of time, and without regard to the issue of right of way, where it was undisputed that Brancati had the right of way.
In contrast, the verdict-director submitted to the jury, Instruction No. 10, patterned after MAI 17.05 Failure to Keep a Careful Lookout, did not restrict Appellants from submitting their allegations of comparative fault to the jury as the "careful lookout" language of Instruction No. 10 essentially subsumed the refused instruction. As submitted, Instruction No. 10 did not prejudice Appellants because they were free to argue the fault of Brancati, consistent with Missouri law and the Missouri approved jury instructions.
The trial court did not err in refusing Appellants' Instruction No. C, as it did not comply with the Missouri approved jury instructions, was vague, argumentative, not supported by the facts, and constituted a roving commission. Point IV is denied.
Conclusion
The Judgment is affirmed.
Lisa P. Page, Chief Judge and Theresa Counts Burke, Special Judge: Concur

At the time of the collision, Brancati was 39 years old and a professor at Washington University in the Political Science Department. At the time of trial, Brancati had relocated to New York and was employed as a professor at Columbia University.

Appellants did not object to the testimony relating to Brancati's running.

See Appellants' Supplemental Motion in Limine, Motion to Strike and Motion for Sanctions.

At the time, Brancati's counsel did not have copies of the records related to this treatment, therefore counsel only disclosed the provider and the dates she provided services to Brancati.

Unless otherwise indicated, all further statutory references are to RSMo Supp. 2017. The amended statute was commonly referred to as Senate Bill 31 (2017).

In reaching its conclusion, the trial court relied on Deck v. Teasley, 322 S.W.3d 536 (Mo. banc 2010). In Deck, the Court analyzed the former version of Section 490.715.5 and held that the trial court erred in ruling plaintiff's claim for past medical expenses was limited to amount actually paid for the treatment she received arising from an automobile accident. Deck, 322 S.W.3d at 539. The Court held that plaintiff was able to present evidence of the amount of medical bills charged as additional evidence of the value of medical treatment rendered in order to rebut the presumption "that the dollar amount necessary to satisfy the financial obligation to her health care providers constituted the value of her medical treatment." Id.

All further references to Sections 537.600 to 537.650 are to RSMo 2000 as amended.

Appellants did not seek a continuance and the case proceeded to trial on September 18, 2017.

Even assuming that under the facts of this case a leaving a place of safety submission was appropriate, MAI 17.04 was available. See, MAI 17.04, Failure to Act After Danger of Collision Apparent. The Notes on Use specifically provide that MAI 17.04 may be used in comparative fault submissions. MAI 17.04, n. 1. Appellants never offered an instruction modeled after MAI 17.04 but instead relied on a Not in MAI submission that failed to comply with MAI.

We agree with Brancati that the cases relied on by Appellants to support their "place of safety" argument are factually dissimilar from the instant case. See Anderson v. Sellers, 521 S.W.2d 33 (Mo. App. 1975) ; Kuzuf v. Gebhardt, 602 S.W.2d 446, 448 (Mo. banc 1980) ; Kilgore v. Linville, 733 S.W.2d 62 (Mo. App. E.D. 1987) ; Oldaker v. Peters, 817 S.W.2d 245 (Mo. banc 1991).

We note that Instruction No. C did not require the jury to find that Brancati knew or should have known she was moving into the path of an oncoming vehicle (an ultimate fact necessary for recovery under Appellants' proposed theory of fault), which, as Brancati's correctly points out, also makes "immediate path" a misstatement of the law.