

# In the Missouri Court of Appeals
## Eastern District
### DIVISION TWO

| | | |
|---|---|---|
| MARY J. MOORE, | ) | No. ED107143 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| vs. | ) | |
| | ) | Honorable Christopher E. McGraugh |
| BI-STATE DEVELOPMENT AGENCY | ) | |
| D/B/A METRO, | ) | |
| | ) | |
| Respondent. | ) | FILED: August 27, 2019 |

## Introduction

Mary J. Moore ("Moore") appeals the trial court's amended judgment reducing her personal injury award against Bi-State Development Agency d/b/a Metro ("Bi-State") from $1.878 million to $420,606.00 pursuant to the statutory cap set forth for sovereignly immune public entities in Section 537.610.[1] Moore argues the trial court misapplied the law when granting the remittitur because Section 70.429 mandates that Bi-State comply with all federal safety rules and regulations, including 49 C.F.R. Part 387,[2] which requires Bi-State to satisfy judgments up to five million dollars for personal injuries caused by the negligent operation of its buses carrying sixteen or more passengers. Because Section 70.429 supersedes the statutory cap on damages imposed by Section 537.610, we reverse the judgment of the trial court granting Bi-

---

[1] All Section references are to RSMo (2016), unless otherwise indicated.
[2] All C.F.R. references are to the Federal Motor Carrier Safety Administration, Department of Transportation, 49 C.F.R. Parts 300–99 (2018).

State's motion for remittitur and remand for the trial court to enter judgment consistent with this opinion.

## Factual and Procedural History

This personal injury suit arose following a motor vehicle accident involving a Bi-State Call-A-Ride bus and a school bus. Bi-State's Call-A-Ride bus seats sixteen to eighteen passengers. At the time of the accident, Moore was driving the school bus. The Bi-State Call-A-Ride bus collided with the side of the school bus. The collision seriously injured Moore, who brought a personal injury suit against Bi-State.

The case proceeded to trial on May 7, 2018. The jury returned a verdict in favor of Moore and awarded her $1.878 million in damages. Bi-State moved for remittitur of the damages award, arguing both that the award was excessive and that the award should be reduced pursuant to the liability limitations for public entities set forth in Section 537.610. The trial court granted Bi-State's motion for remittitur in part, ruling that the liability limitations set forth in Section 537.610 controlled. The trial court entered an amended final judgment in accord with the 2018 statutory cap of Section 537.610 and reduced the jury's award to $420,606.00 plus interest at the rate of 6.25 percent per annum and taxable costs. Moore now appeals.

## Point on Appeal

In her sole point on appeal, Moore argues the trial court erred in granting Bi-State's motion for remittitur and reducing her personal injury award pursuant to Section 537.610 because Section 70.429, incorporating 49 C.F.R. Part 387, requires Bi-State to satisfy in full the judgment award to her for personal injuries caused by Bi-State's negligent operation of its Call-A-Ride bus.

2

Standard of Review

We review a question of statutory interpretation de novo. Newsome v. Kansas City, Mo. Sch. Dist., 520 S.W.3d 769, 780 (Mo. banc 2017) (internal citation omitted); Brancati v. Bi-State Dev. Agency, 571 S.W.3d 625, 636 (Mo. App. E.D. 2018) (internal citation omitted). "The primary rule of statutory interpretation is to ascertain the intent of the legislature from the language used, to give effect to that intent if possible, and to consider the words in their plain and ordinary meaning." S. Metro. Fire Prot. Dist. v. City of Lee's Summit, 278 S.W.3d 659, 666 (Mo. banc 2009) (internal quotation omitted); see Newsome, 520 S.W.3d at 780 (internal citation omitted).

Discussion

Our review of Moore's appeal requires that we interpret and apply two distinct statutes enacted by the Missouri Legislature. We consider legislation specifically drafted to address the Legislature's concerns regarding the safety of public transit systems in light of the Legislature's concurrent desire to limit the scope of financial responsibility by public entities in civil litigation.

Missouri and Illinois jointly created Bi-State in 1949 through an interstate compact. See Section 70.370, RSMo 1949; 45 Ill. Comp. Stat. 100/1 (1949); Jordan v. Bi-State Dev. Agency, 561 S.W.3d 57, 59–60 (Mo. App. E.D. 2018). The purpose of creating Bi-State was to "provide a unified mass transportation system" benefitting both Missouri and Illinois. Id. (internal citation omitted). Bi-State is a public entity for purposes of sovereign immunity from tort liability. See Section 537.600.3 (defining "public entity" to include "any multistate compact agency created by a compact formed between this state and any other state which has been approved by the Congress of the United States"). While the current Section 537.600.3 unambiguously defines "public entity" to include interstate compact agencies like Bi-State, prior versions of the statute did not. However, in 1988, the Supreme Court of Missouri held Bi-State was a public entity

3

falling under the liability protections of Section 537.600, RSMo 1986. State ex rel. Trimble v. Ryan, 745 S.W.2d 672, 674 (Mo. banc 1988) (citing Section 537.600, RSMo 1986). Subsequent versions of Section 537.600 through 2005 clarified whether the inclusion of interstate compact agencies as public entities retroactively applied to prior decisions. See Section 537.600.4–5, Cum. Supp. RSMo 1989.

As a sovereignly immune public entity, Bi-State's immunity against liability is waived only to the extent provided by statute. See Section 537.600.1; Brancati, 571 S.W.3d at 636. Missouri allows the waiver of sovereign immunity to the extent that the public entity insures against judgment—but only to the extent insured. See Sections 537.600, .610; Brancati, 571 S.W.3d at 636. Despite the amount of liability insurance obtained by a public entity, the statutory caps still limit recovery. See Section 537.610.2; Brancati, 571 S.W.3d at 636.[3] The statute capping recovery of damages against public entities states:

> The liability of the state and its public entities on claims within the scope of sections 537.600 to 537.650, shall not exceed two million dollars for all claims arising out of a single accident or occurrence and **shall not exceed three hundred thousand dollars for any one person in a single accident or occurrence**, except for those claims governed by the provisions of the Missouri workers' compensation law, chapter 287.

Section 537.610.2 (emphasis added).[4]

After the Supreme Court held that Bi-State was a public entity as defined under Section 537.600, RSMo 1986, the Missouri Legislature in 1993 enacted Section 70.429. The statute provides:

---

[3] See also Hubble v. Bi-State Dev. Agency of Illinois-Missouri Metro. Dist., 238 Ill. 2d 262, 268 (Ill. 2010) (noting that Bi–State is a "local public entity" within the purview of Illinois's Tort Immunity Act).
[4] The liability limitation is adjusted annually according to the Implicit Price Deflator for Personal Consumption Expenditures as published by the Bureau of Economic Analysis of the United States Department of Commerce. Section 537.610.5.

> All interstate and intrastate United States Department of Transportation safety rules and regulations shall apply to all operations of the bi-state development transit system. On May 26, 1993, the agency shall not be eligible to receive state funds unless it adopts a policy to comply with this requirement.

Section 70.429.[5] Section 70.429 applies specifically to Bi-State, which is a bi-state development transit system; indeed, Bi-State is the only entity to which Section 70.429 applies. The record presents no factual dispute that Bi-State is a bi-state development transit system that receives state funding.

The United States Department of Transportation (the "DOT"), through the Federal Motor Carrier Safety Administration (the "FMCSA"), promulgated safety rules and regulations to oversee federal safety standards for commercial motor carriers and motor vehicle operators. See 49 C.F.R. Parts 300–99 Chapter Three—FMCSA, DOT. Among the safety regulations included within Parts 350–99 FMCSA Subchapter B—Federal Motor Carrier Safety Regulations is Part 387—Minimum Levels of Financial Responsibility for Motor Carriers. Part 387 contains four subparts, only two of which apply to the facts before us. Subpart B contains rules specific to motor carriers of passengers and provides:

> This subpart prescribes the minimum levels of financial responsibility required to be maintained by for-hire motor carriers of passengers operating motor vehicles in interstate or foreign commerce. **The purpose of these regulations is to create additional incentives to carriers to operate their vehicles in a safe manner** and to assure that they maintain adequate levels of financial responsibility.

49 C.F.R. Part 387.25 (emphasis added). The federal code defines "financial responsibility" as "the financial reserves (e.g., insurance policies or surety bonds) sufficient to satisfy liability amounts set forth in this subpart covering public liability." 49 C.F.R. Part 387.29. The rules

---

[5] Because Bi-State is an interstate compact agency, we mention that Illinois similarly adopted a state statute providing for the application of federal safety regulations to Bi-State for the operation of its rail fixed guideway public transportation systems. See 45 Ill. Comp. Stat. 110/10 (authorizing the St. Clair County Transit District "[t]o require the Bi-State Development Agency to comply with the system safety program standard and 'Rail Fixed Guideway Systems; State Safety Oversight', 49 C.F.R. Part 659[.]").

state that "[n]o motor carrier shall operate a motor vehicle transporting passengers until the motor carrier has obtained and has in effect the minimum levels of financial responsibility as set forth in [Part] 387.33[T] of this subpart." 49 C.F.R. Part 387.31, .33T. As further explained in Subpart C, which contains rules for the insurance policies, financial responsibility requirements are satisfied by the entity acquiring an insurance policy or surety bond meeting the minimum "amounts prescribed in [Part] 387.303[T], conditioned to pay any final judgment recovered against such motor carrier for bodily injuries to or the death of any person resulting from the negligent operation, maintenance or use of motor vehicles in transportation[.]" 49 C.F.R. Part 387.301T(a)(1),[6] .303T ("Security for the protection of the public: Minimum limits").

The Missouri Legislature adopted the DOT's federal safety regulations for Bi-State as an express condition of Bi-State's acceptance of state funding in Section 70.429 ("All interstate and intrastate United States Department of Transportation safety rules and regulations *shall* apply to all operations of the bi-state development transit system.") (emphasis added). The use of the term "shall" confers a mandatory obligation. Thus, in return for accepting state funding for its operations, Bi-State agreed that the DOT's federal safety regulations apply to its operations. See Section 70.429. The DOT through the FMCSA explicitly promulgated the minimum levels of financial responsibility for public liability in 49 C.F.R. Part 387 as safety regulations for the protection of the public. See 49 C.F.R. Part 387.25 ("The purpose of these regulations is to create additional incentives to carriers to operate their vehicles in a safe manner and to assure that they maintain adequate levels of financial responsibility."), .303T ("Security for the

---

[6] Because the DOT through the FMCSA is revising Title 49, some regulations are effective through reenacted temporary regulations, indicated with the appellation "T." See DOT, FMSCA 82 Fed. Reg. 5292, 5307–08 (Jan. 17, 2017).

protection of the public: Minimum limits").[7] The minimum level of financial responsibility as applied to the sixteen-passenger Bi-State Call-A-Ride motor vehicle is five million dollars. See 49 C.F.R. Part 387.33T(a) (schedule of limits—public liability), .303T(b)(1)(ii)(A).[8]

The question presented is whether Section 70.429, which mandates Bi-State's compliance with the federal regulations requiring a *minimum financial responsibility of five million dollars*, conflicts with Section 537.610, which limits Bi-State as a public entity to a *maximum financial responsibility of three hundred thousand dollars* (as adjusted for inflation). See Sections 70.429, 537.600, 610.1–2; 49 C.F.R. Part 387; Earth Island Inst. v. Union Elec. Co., 456 S.W.3d 27, 33 (Mo. banc 2015) (citing State ex rel. City of Jennings v. Riley, 236 S.W.3d 630, 631 (Mo. banc 2007)) (explaining that "identifying conflict between two statutes [i]s a precondition to the application of the [conflict-resolving] principles of statutory construction"). Sections 70.429 and 537.610 are in obvious conflict. See Sections 70.429, 537.610. Absent the conflicting directive of Section 70.429, Section 537.600 applies to Bi-State as a sovereignly immune public entity and limits Bi-State's financial responsibility for personal injury awards to the statutory caps set forth in Section 537.610. See Sections 70.429, 537.600, 610; Trimble, 745 S.W.2d at 674 (affirming a judgment reducing a personal injury award against Bi-State solely based on the disputed issue of whether Bi-State was a public entity under Section 537.600, RSMo 1986); Brancati, 571 S.W.3d at 636–37 (affirming a judgment reducing a personal injury award against Bi-State solely based

---

[7] We reject Bi-State's argument that Section 70.429 incorporates only those parts of the code that are referenced in 49 C.F.R. Part 355—Compatibility of State Laws and Regulations Affecting Interstate Motor Carrier Operations, which authorizes states to enact their own laws for commercial vehicle safety so long as they are compatible with federal safety regulations and meet applicable regulatory guidelines. 49 C.F.R. Part 355.1, .5, .25.

[8] The record reflects that Bi-State complies with 49 C.F.R Part 387 by maintaining an insurance policy capable of satisfying a five million dollar judgment. As stated in its interrogatory responses and expressed at oral argument, Bi-State maintains a self-insured retention of five million dollars per occurrence, which is applicable only to third party liability claims against which Bi-State is not sovereignly immune.

on the disputed issue of whether Bi-State's sovereign immunity extended to its employee).[9] Section 70.429, on the other hand, expressly requires Bi-State to accept financial responsibility, under the facts of this case, up to five million dollars, substantially in excess of the statutory caps. Because Bi-State cannot comply with both statutes concurrently, this conflict must be resolved under canons of statutory interpretation. See Earth Island Inst., 456 S.W.3d at 33.

Here, the later-enacted Section 70.429 is plainly more specific in both language and application than the general sovereign immunity tort liability caps applying to all public entities in Section 537.610. Indeed, the language of Section 70.429 is so specific that it only applies to one entity—Bi-State. Additionally, Section 70.429 references regulations applying only to a narrow type of claim: personal injury actions involving the negligent operation of Bi-State's buses. Section 70.429; 49 C.F.R. Part 387.301T, .303T. We recognize that Section 537.610.2 expressly excepts only claims governed by the workers' compensation law. However, where two statutes conflict, "a chronologically later statute, which functions in a particular way will prevail over an earlier statute of a more general nature, and the latter statute will be regarded as an exception to or qualification of the earlier general statute." S. Metro. Fire Prot. Dist., 278 S.W.3d at 666 (internal quotation omitted); see also Earth Island Inst., 456 S.W.3d at 33. Section 70.429 functions as an exception to Section. 537.610. The Missouri Legislature had the opportunity to resolve the conflict between these statutes when it amended Section 537.610, most recently in 2009. But it did not. The conflict between these two statutes persists.

---

[9] Moore's claim is one of personal injury arising from the negligent operation of Bi-State's buses, which is the type of claim subject to the waiver of sovereign immunity under Section 537.600.1. Thus, rather than finding Moore's claim falls outside the scope of Section 537.610.2, we instead find Section 537.610.2 would apply but conflicts with and yields to the more specific minimum liability requirements incorporated by Section 70.429. See Sections 70.429, 537.610.2; see also Union Elec. Co. v. Metro. St. Louis Sewer Dist., 258 S.W.3d 48, 56–57 (Mo. banc 2008) (holding the Section 537.610.2 sovereign immunity liability cap did not apply to a right-of-contribution claim brought under the Overhead Power Line Safety Act); Bachtel v. Miller County Nursing Home Dist., 110 S.W.3d 799, 804 (Mo. banc 2003) (holding the Section 537.610.2 sovereign immunity liability cap did not apply to a retaliatory-discharge claim brought under the Omnibus Nursing Home Act).

8

The fact that Section 537.610 was amended after the enactment of Section 70.429 has no consequence here. Missouri law is guided by the "well-established principle that [w]here there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one, regardless of the priority of enactment." Earth Island Inst., 456 S.W.3d at 33 (internal quotation omitted); see also Mispagel v. Mo. Highway & Transp. Comm'n, 785 S.W.2d 279, 281 (Mo. banc 1990) (citing Sections 537.600, 610, Cum. Supp. RSMo 1989) (finding the specific Section 537.600 necessarily prevailed over the general Section 537.610 where the reenactment of Section 537.610 via legislative amendment in substantially the same language did not change its status as an earlier statute).

Therefore, we must give effect to the Missouri Legislature's decision to enact Section 70.429, a statute specifically requiring Bi-State's compliance with the DOT's safety regulations, including the regulation requiring that Bi-State carry a minimum financial responsibility of five million dollars for personal injury claims involving its sixteen-passenger Bi-State Call-A-Ride vehicles. See Section 70.429. Although the canons of statutory construction are not intended to be rigidly applied, the canons in this case lead us reasonably to conclude that the more specific Section 70.429 controls over the more general Section 537.610. See Sections 70.429, 537.610; Earth Island Inst., 456 S.W.3d at 33; S. Metro. Fire Prot. Dist, 278 S.W.3d at 666.

We acknowledge that "provisions waiving sovereign immunity are to be strictly construed." Greene Cty. v. Pennel, 992 S.W.2d 258 (Mo. App. S.D. 1999); but see Bachtel, 110 S.W.3d at 803–04 ("Nothing in the statutes or case law requires that certain magic words must be used in order to waive sovereign immunity."). We further understand that plaintiffs seeking an exception to the protections of sovereign immunity "must plead with specificity those facts demonstrating the exception." A.F. v. Hazelwood Sch. Dist., 491 S.W.3d 628, 633 635 (Mo.

9

App. E.D. 2016) (internal citations omitted). Bi-State seeks protection of the statutory cap provided by Section 537.610 for public entities otherwise protected by sovereign immunity. The record shows that Moore has sustained her burden of demonstrating an exception to the protections otherwise provided to Bi-State as a public entity under Section 537.610. See Sections 70.429, 537.610.

Accordingly, because we find Section 70.429 governs the amount of damages Moore may be awarded against Bi-State in her personal injury action based upon Bi-State's negligent operation of its Call-A-Ride bus, we find the trial court erred in granting Bi-State's motion for remittitur and reducing Moore's award based on the liability limitations in Section 537.610.

## Conclusion

The judgment of the trial court is reversed and remanded with instructions for the trial court to reconsider the award of damages to Moore and enter a new judgment consistent with this opinion.

KURT S. ODENWALD, Judge

Philip M. Hess, P.J., concurs.
Lisa P. Page, J., concurs.

10